## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM HOWARD; JASON DUEMLER; NICOLE DUEMLER; ANN DUEMLER; MICHAEL LUTZ; SHERRI HOWELL; ROCHELLE JAMMER; and MARK KOHLHORST, individually and on behalf of all others similarly situated, | No. 25-cv-10926 Hon. Mark A. Goldsmith |
| Plaintiffs, | |
| v. | |
| UBP BAY CITY, LLC d/b/a BAY CITY BRIDGE PARTNERS and CITY OF BAY CITY, | |
| Defendants. | |

## DEFENDANT UBP BAY CITY, LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR EARLY DISCOVERY

## **TABLE OF CONTENTS**

ISSUE PRESENTED.................................................................................iv

STATEMENT OF CONTROLLING AUTHORITY..............................................v

I.     INTRODUCTION .........................................................................1

II.    FACTUAL BACKGROUND..........................................................2

III.   RELEVANT LEGAL STANDARDS................................................5

IV.   ARGUMENT...............................................................................7

       A.    Discovery Is Unnecessary to Affirm the Court Has Jurisdiction.........7

       B.    Discovery Is Unnecessary to Determine No CAFA Exception Applies..................................................................................10

       C.    The Requested Discovery Is Unduly Burdensome, Premature, and Intrudes Upon the Personally Identifying Information of Non-Parties .......................................................................13

V.    CONCLUSION...........................................................................16

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Adams v. 3M Co.*,
    65 F.4th 802 (6th Cir. 2023) ...............................................................................12

*Adams v. Adient US LLC*,
    No. 1:20-CV-01197-JTF-JAY, 2021 WL 6622209 (W.D. Tenn.
    Sept. 30, 2021) ....................................................................................................11

*Badeen v. PAR, Inc.*,
    No. 19-10532, 2020 WL 6135656 (E.D. Mich. Mar. 31, 2020).........................9

*Brooks v. Peoples Bank*,
    732 F. Supp. 3d 765 (S.D. Ohio 2024) ..............................................................14

*Clark v. Lender Processing Servs.*,
    562 F. App'x 460 (6th Cir. 2014)...................................................................6, 10

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................................9

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014)................................................................................................6

*Dziennik v. Sealift, Inc.*,
    No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464 (E.D.N.Y.
    May 23, 2006)................................................................................................2, 15

*Fluke v. Cashcall, Inc.*,
    No. CIV.A.08-5776, 2009 WL 637461 (E.D. Pa. Mar. 10, 2009) ....................15

*Frank v. U.S. Food & Drug Admin.*,
    998 F. Supp. 2d 596 (E.D. Mich. 2014) ..............................................................1

*Gen. Ret. Sys. of the City of Detroit v. Onyx Cap. Advisors, LLC*,
    No. 10-CV-11941, 2010 WL 2231885 (E.D. Mich. June 4, 2010)...........2, 7, 15

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)..............................................................................................11

*Kendrick v. FCA US LLC*,
No. 21-CV-12995, 2022 WL 2758518 (E.D. Mich. July 14, 2022)................8, 9

*Martin v. Trott L., P.C.*,
265 F. Supp. 3d 731 (E.D. Mich. 2017) ....................................................7, 10, 11

*Mason v. Lockwood, Andrews & Newnam, P.C.*,
842 F.3d 383 (6th Cir. 2016) .......................................................................5, 7, 10

*McCann v. W. Chester Hosp., LLC*,
233 F. Supp. 3d 607 (S.D. Ohio 2017) ...............................................................14

*In re Numotion Data Incident Litig.*,
No. 3:24-CV-00545, 2025 WL 57712 (M.D. Tenn. Jan. 9, 2025).....................14

*Pantel v. Gen. Motors, LLC*,
No. 19-13219, 2020 WL 3867278 (E.D. Mich. July 9, 2020)..............................6

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..............................................................................................5

*Smith v. Nationwide Prop. & Cas. Ins. Co.*,
505 F.3d 401 (6th Cir. 2007) ...............................................................................6

*Stifel v. Hopkins*,
477 F.2d 1116 (6th Cir. 1973) ...........................................................................13

*Sweeney v. Federated Retail Holdings, Inc.*,
No. 06-10887, 2006 WL 2521410 (E.D. Mich. Aug. 30, 2006) ........................15

**Statutes and Rules**

28 U.S.C. § 1332...........................................................................................*passim*

28 U.S.C. § 1441 ..................................................................................................1

28 U.S.C. § 1446 ..................................................................................................1

28 U.S.C. § 1453 ..................................................................................................1

Local Rule 7.1 .......................................................................................................1

Fed. R. Civ. P. 26 ..............................................................................................2, 7

## <u>ISSUE PRESENTED</u>

Should early discovery be authorized in relation to Plaintiffs' contention that this case was improperly removed from Michigan's Bay County Circuit Court where, as here, facts not subject to reasonable dispute establish that the Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") and Plaintiffs cannot carry their burden of proving any exception to CAFA applies?

Plaintiffs state: Yes

Defendant UBP Bay City, LLC states: No

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to Local Rule 7.1(d)(2), Defendant states that the following authorities are the controlling or most appropriate authorities for the relief requested:

*Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014);

*Clark v. Lender Processing Servs.*, 562 F. App'x 460 (6th Cir. 2014); and

*Adams v. 3M Co.*, 65 F.4th 802 (6th Cir. 2023).

## I. **INTRODUCTION**

Defendant UBP Bay City, LLC, d/b/a Bay City Bridge Partners ("UBP"), through counsel, hereby opposes Plaintiffs' motion for early discovery, ECF No. 12 (the "Motion" or "Mot."). For the reasons set forth herein, Plaintiffs' Motion should be denied. No discovery is necessary to confirm that the Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. §§ 1332, 1441, 1446, 1453. Nor is any discovery necessary to confirm that no exception to CAFA applies. *See* 28 U.S.C. § 1332(d)(4).

The discovery Plaintiffs want to seek consists of: "names, address[es], and full contact information of all charged non-Bay City, Michigan residents and drivers who have crossed the Independence Bridge and paid any toll or purchased an unlimited pass from BCBP," as well as "the corresponding dates of crossing and the amount charged." *See* Exhibit 1 (email exchange between counsel, April 1, 2025).[1] In other words, Plaintiffs are asking the Court to compel UBP to compile a list of all putative class members and their contact information, even though Plaintiffs' claims

---

[1]     This is the only discovery Plaintiffs requested in their pre-motion correspondence to UBP. *See* Exhibit 1. To the extent Plaintiffs intend to request broader discovery from UBP in their reply, the Court should deny that request. Plaintiffs did not meet-and-confer with UBP about any such request before filing their Motion. *See* Local Rule 7.1(a)(1); *see also* Practice Guidelines for Judge Mark A. Goldsmith at 4. In any event, "new arguments or issues are waived when they are raised for the first time in a reply brief." *Frank v. U.S. Food & Drug Admin.*, 998 F. Supp. 2d 596, 602 (E.D. Mich. 2014).

have not even survived a motion to dismiss, much less a motion for class certification.

The general rule across federal courts is that litigants may not propound this type of discovery request prior to class certification.[2] Here, Plaintiffs are doing even more than that: they are seeking to propound these discovery requests before there has even been a Rule 26(f) conference. But "[a] party seeking expedited discovery . . . has the burden of showing good cause or need in order to justify deviation from the normal timing of discovery." *Gen. Ret. Sys. of the City of Detroit v. Onyx Cap. Advisors, LLC*, No. 10-CV-11941, 2010 WL 2231885, at *3 (E.D. Mich. June 3, 2010) (citation omitted). Plaintiffs have failed to carry that burden here.

Accordingly, and for the reasons further elaborated below, the Motion should be denied.

## II.   **FACTUAL BACKGROUND**

UBP is part of the United Bridge Partners corporate family, which designs, builds, owns, and operates transportation infrastructure across the United States. The City of Bay City ("Bay City"), contracted with UBP to save two bridges in Bay City named Liberty Bridge and Independence Bridge (together the "Bridges"). *See*

---

[2]    "Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients. . . ." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (collecting cases).

ECF No. 1-1 (the "Complaint" or "Comp.") ¶¶ 18, 21, 25-27, 32.  The Bridges had fallen into disrepair and were in desperate need of costly rehabilitation.  *See id*.

Between 2020 and 2024, UBP spent approximately $170 million repairing the Bridges, none of which was paid for by Bay City.  Instead, UBP's consideration for these expenditures was that, once the Bridges were substantially rehabilitated, UBP would be entitled to collect tolls for use of the Bridges.  *See* Comp. ¶¶ 29-34.  On January 1, 2025, after years of work, UBP finally began to collect tolls for use of the Independence Bridge (but only from non-residents of Bay City).  *See* Comp. ¶ 76.

Just two months after the commencement of tolling on the Independence Bridge, Plaintiffs filed this action against UBP and Bay City.  Plaintiffs are allegedly seven citizens of Michigan and one citizen of Indiana.  *See* Comp. ¶¶ 7-13.  Plaintiffs seek to represent a class of "thousands" of people who were charged a toll for use of Independence Bridge.  *See* Comp. ¶ 89.  Plaintiffs request wide-ranging relief from UBP including: (i) refunds of all tolls charged to date; (ii) financial compensation for class members' "financial burdens"; (iii) "treble damages"; (iv) awards of "statutory penalties [and] fines" against UBP; and (v) declaratory and injunctive relief, including injunctions "preventing [UBP] from . . . regularly closing and continuing to close the Independence Bridge" to conduct repairs and maintenance work and "[p]rohibiting [UBP] from charging tolls or collecting fees for unlimited passes until the Independence Bridge is fully operational 24 hours per day, 7 days

per week." Comp. ¶¶ 112, 122, 129-130, 143, 153, 160, 165.  By contrast, the only substantive relief Plaintiffs seek from Bay City is declaratory or injunctive relief that would compel Bay City to find UBP in breach of contract, effectively forcing Bay City to join Plaintiffs in taking action against UBP.  *See* Comp. ¶¶ 112, 122.

Simultaneous with the filing of this action, Plaintiffs' counsel delivered a flurry of interviews to local news outlets in Bay County, making statements such as: "Taking bridge-toll money was not lawful and it isn't fair," and "We seek not just justice for those who have been wronged, but to prevent the economic harm that is already affecting our local residents and the far-reaching devastation that will occur if this continues unchecked."[3]  In these interviews, Plaintiffs' counsel encouraged readers to visit a website they have created promoting this lawsuit, www.bcbridgelawsuit.com, explaining they will "keep in touch with everyone

---

[3]     Waterman, Cole, *Bay City Bridge Partners targeted with class action lawsuit seeking to reimburse fees, end tolling*, MLIVE.COM, https://www.mlive.com/news/saginaw-bay-city/2025/03/bay-city-bridge-partners-targeted-with-class-action-lawsuit-seeking-to-reimburse-fees-end-tolling.html (March 5, 2025); *see also* Keinath, Emily and Felton, James, *Attorney explains reason for class action lawsuit against BCBP*, WNEM 5, https://www.wnem.com/2025/03/05/attorney-explains-reason-class-action-lawsuit-against-bcbp/ (March 5, 2025); Camp, Terry, *"A toll too soon": Class action lawsuit filed against bridge company, Bay City*, ABC 12 NEWS, https://www.abc12.com/news/a-toll-too-soon-class-action-lawsuit-filed-against-bridge-company-bay-city/article_eb50534e-fa0e-11ef-b004-47b4dd68ad4f.html (March 5, 2025); News Desk, *Lawsuit Filed Against Bay City Bridge Partners Over Tolling*, 100.5 & 790 NEWSRADIO WSGW, https://www.wsgw.com/lawsuit-filed-against-bay-city-bridge-partners-over-tolling/ (March 5, 2025).

through that as things develop."[4]   These widely disseminated remarks have contributed to public hostility toward UBP in Bay City and the surrounding areas.

On April 1, 2025, UBP timely removed this action from the 18th Circuit Court for the County of Bay, Michigan, to this Court.  *See* ECF No. 1 ("Notice of Removal").  For the reasons set forth herein, removal was justified as a matter of law, and no discovery is necessary to affirm that conclusion.

## III.   RELEVANT LEGAL STANDARDS

"In 2005, Congress enacted the Class Action Fairness Act (CAFA) in response to 'perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts.'"  *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 386 (6th Cir. 2016); *see also Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 459 (2010) (Ginsburg, J., dissenting) ("By providing a federal forum [through CAFA], Congress sought to check what it considered to be the overreadiness of some state courts to certify class actions.") (citing S. Rep. No. 109-14, at 4 (2005) (CAFA prevents lawyers from "gam[ing] the procedural rules [to] keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes")).

Consistent with its legislative purpose, CAFA's "provisions should be read

---

[4]     Keinath, Emily and Felton, James, *Attorney explains reason for class action lawsuit against BCBP*, WNEM 5, https://www.wnem.com/2025/03/05/attorney-explains-reason-class-action-lawsuit-against-bcbp/ (March 5, 2025).

broadly," and there is a "strong preference" that interstate actions "should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109-14 at 43 (2005)). "Even though there is usually a presumption to resolve doubts regarding removal in favor of remand, '[t]here is no presumption against removal of cases under CAFA.'" *Pantel v. Gen. Motors, LLC*, No. 19-13219, 2020 WL 3867278, at *10 (E.D. Mich. July 9, 2020) (modification in original, citations omitted).

Pursuant to CAFA, federal district courts have original jurisdiction of any class action where: (i) "the matter in controversy exceeds the sum or value of $5,000,000"; (ii) "any member of a class of plaintiffs is a citizen of a State different from any defendant; and (iii) "the number of [class] members" is more than 100. 28 U.S.C. § 1332(d)(2), (5). The removing party has the burden of demonstrating each of these elements by a preponderance of the evidence. *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007).

There are certain statutory exceptions to CAFA jurisdiction. *See* 28 U.S.C. § 1332(d)(3), (4), (5). These exceptions "do not deprive a court of jurisdiction. The statute speaks only of a district court's declining jurisdiction if the exceptions apply. This language clearly indicates that the exceptions do not deprive the court of jurisdiction it otherwise possesses because a court could not 'decline' jurisdiction that it never had in the first place." *Clark v. Lender Processing Servs.*, 562 F. App'x

6

460, 465 (6th Cir. 2014) (citation omitted); *see also Martin v. Trott L., P.C.*, 265 F. Supp. 3d 731, 744 (E.D. Mich. 2017) (same).

"[T]he party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence." *Mason*, 842 F.3d at 388.  Similarly, "[a] party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause or need in order to justify deviation from the normal timing of discovery." *Gen. Ret. Sys. of the City of Detroit*, 2010 WL 2231885, at *3 (citation omitted).  For the reasons set forth herein, Plaintiffs cannot carry those burdens.

## IV.    ARGUMENT

### A.    Discovery Is Unnecessary to Affirm the Court Has Jurisdiction

Plaintiffs do not dispute that: (i) one of the named Plaintiffs is a citizen of Indiana, and therefore diverse from Defendants UBP and Bay City; and (ii) they seek to represent a putative class of several thousand individuals, including other persons who do not share citizenship with Bay City and UBP.  *See* Notice of Removal ¶ 23 (citing Comp. ¶¶ 7-13, 87).  Accordingly, there is no dispute that two of the three elements of CAFA jurisdiction are satisfied: minimal diversity of citizenship and a proposed class of more than 100 members.  *See* 28 U.S.C. § 1332(d)(2), (5).

Plaintiffs suggest they need to know the exact tolls collected from each potential class member to assess whether the final element of CAFA jurisdiction has

been satisfied, and the amount-in-controversy exceeds $5 million.  *See* Mot. at 8.
But that argument misrepresents the relief Plaintiffs are seeking in their Complaint
and ignores the bases for jurisdiction set forth in UBP's Notice of Removal.  *See*
Notice of Removal ¶¶ 13, 27-34.  Disgorgement of tolls is only one small component
of the relief Plaintiffs are seeking.  *See* Notice of Removal ¶¶ 13, 27-34.  Far more
significant are Plaintiffs' demands for onerous injunctive relief, which must be
considered for purposes of determining the amount-in-controversy.  *See Kendrick v.
FCA US LLC*, No. 21-CV-12995, 2022 WL 2758518, at *6 n.5 (E.D. Mich. July 14,
2022) ("Plaintiffs are also seeking injunctive relief, and it is appropriate to consider
the value of injunctive relief when determining the amount in controversy.") (citing
*Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th
Cir. 2010)).

Plaintiffs are seeking injunctive relief that would greatly impair—and
possibly eliminate—UBP's ability to collect tolls for use of the Independence
Bridge.  *See supra* at 3-4.  To date, UBP has invested approximately *$170* million
repairing, rehabilitating, and modernizing Independence Bridge and Liberty Bridge,
and has an ongoing contractual obligation to maintain the Independence Bridge for
another 75 years.  *See* Notice of Removal ¶ 33; ECF No. 1-1 at Exhibit 1.  UBP
undertook these costly expenditures and burdensome obligations on the
understanding that it would be able to recoup its losses through the collection of

tolls.  If UBP is enjoined from collecting tolls for use of the Independence Bridge, this will inflict an irreparable injury on UBP that far exceeds $5 million, reaching into the hundreds of millions.  *See Kendrick*, 2022 WL 2758518, at *6 n.5 (citing *Cleveland Hous. Renewal Project*, 621 F.3d at 560).

Furthermore, even setting aside injunctive relief, Plaintiffs are also seeking statutory penalties, fines, and treble damages on behalf of thousands of putative class members.  In-and-of themselves, these demands would be sufficient to conclude the amount-in-controversy likely exceeds $5 million.  *See, e.g.*, *Badeen v. PAR, Inc.*, No. 19-10532, 2020 WL 6135656, at *4 (E.D. Mich. Mar. 31, 2020) ("Considering Plaintiffs' allegation of 1.8 million repossessions together with their request for treble damages under Mich. Comp. Laws § 339.916, it is unambiguously ascertainable that the amount in controversy exceeds $5,000,000."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 573-74 (S.D.N.Y. 2021) (holding that, even if alleged actual damages were less than $5 million, the possibility that the class might recover statutory damages of $500 per violation under state consumer protection laws created a "reasonable probability" that the amount-in-controversy was greater than $5 million for purposes of CAFA).

This record is sufficient to determine that the amount-in-controversy exceeds $5 million.  Compelling the expedited production of the names, contact information, and payment records of thousands of individuals (who have not consented to the

disclosure) would do nothing to disturb this conclusion.  Accordingly, Plaintiffs have not demonstrated any entitlement to expedited discovery.

### B.  Discovery Is Unnecessary to Determine No CAFA Exception Applies

A plaintiff may raise exceptions to CAFA in support of a motion to remand. *See* 28 U.S.C. § 1332(d)(3), (4), (5).  To be clear, these are not limitations on the subject matter jurisdiction of the Court.  *See Clark*, 562 F. App'x at 465; *see also Martin*, 265 F. Supp. 3d at 744.  As such, "the party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence."  *Mason*, 842 F.3d at 388.

Plaintiffs identify three exceptions to CAFA jurisdiction they might consider raising in a motion to remand.[5]  *See* Mot. at 5-8.  Plaintiffs argue that because ***one*** element of each of these exceptions is that a certain proportion of the putative class must be citizens of Michigan, the Court should permit discovery into the names, addresses, and telephone numbers of every putative class member.  *See* Mot. at 8. But each of these exceptions has multiple elements, and Plaintiffs must prove by a preponderance of the evidence that ***every*** element of an exception is satisfied to carry their burden.  *See* 28 U.S.C. § 1332(d)(3), (4).  It is already clear they will be unable

---

[5]  Plaintiffs also suggest they may invoke the "state action exception," but that exception is inapplicable because it only applies if all defendants are government entities.  *See* Mot. at 7.  Moreover, Plaintiffs do not argue the discovery sought by this Motion would be relevant to that exception.  *See id*.

to do so, which renders the citizenship of the putative class members a moot point.

"Home State" Exception: For this exception to apply the "primary defendants"[6] must be citizens of the state where the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(B); *see also Martin*, 265 F. Supp. 3d at 744. Here, UBP is a limited liability company incorporated under the laws of Delaware, and UBP's sole member is a limited liability company also incorporated under the laws of Delaware, which maintains an administrative office in Colorado, and its operating headquarters in Illinois. UBP's sole member makes executive decisions for UBP primarily from its operating headquarters in Illinois, which renders Illinois UBP's "principal place of business." *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) ("the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."). Accordingly, UBP is not a citizen of Michigan for purposes of CAFA, which renders the "home state" exception inapplicable. *See* 28 U.S.C. § 1332(d)(10) (for purposes of CAFA "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

"Local Controversy" Exception: For this exception to apply, one of the

---

6  "Primary defendants are those who are sued directly rather than those who face vicarious liability or contribution or indemnification liability." *Adams v. Adient US LLC*, No. 1:20-CV-01197-JTF-JAY, 2021 WL 6622209, at *15 (W.D. Tenn. Sept. 30, 2021) (citation omitted).

defendants "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims" must be a citizen of Michigan. *See* 28 U.S.C. § 1332(d)(4)(A). In making this determination, the Court must consider the "core" of the allegations in the Complaint and who is the "real target in this action" *See Adams v. 3M Co.*, 65 F.4th 802, 806 (6th Cir. 2023) (citations omitted). Here, while Bay City has been named as a nominal co-defendant, the "real target" of Plaintiffs' claims is UBP, which is not a citizen of Michigan. *See supra* at 3-4. The allegations in the Complaint are focused on UBP's conduct and the only meaningful relief sought in the Complaint is from UBP. *See id.* Indeed, the only substantive relief sought from Bay City consists of declaratory or injunctive relief that would compel Bay City to hold UBP in breach of contract and take further action against UBP. *See id.* Accordingly, there is no "significant relief" being sought from a Michigan defendant, which renders this exception inapplicable. *See Adams*, 65 F.4th at 806.

<u>"Discretionary" Exception</u>: A Court ***may*** elect to decline jurisdiction if at least one third of the putative class members are citizens of the state where the action was filed, and the Court determines that the equities of the case favor remand after considering a six-factor inquiry. *See* 28 U.S.C. § 1332(d)(3). These considerations include "whether the claims asserted involve matters of national or interstate interest" and "whether the class action has been pleaded in a manner that seeks to

avoid Federal jurisdiction." *Id*.  Here, UBP respectfully submits it would be an abuse of discretion to remand this action because it involves "matters of . . . interstate interest" and—in light of the lack of substantive relief sought against Bay City—the city was likely only named as a defendant to eliminate non-CAFA diversity jurisdiction.  *See supra* at 3-4.  Moreover, Plaintiffs' counsel is framing this dispute as a conflict between the local community of Bay County, Michigan and an out-of-state interloper in the form of UBP.  *See supra* at 4-5.  This is precisely the type of controversy where federal jurisdiction is properly invoked.  *See Stifel v. Hopkins*, 477 F.2d 1116, 1125 (6th Cir. 1973) (acknowledging "the reason most often given for the inclusion of diversity jurisdiction in the Constitution [is] the fear of local prejudice against out-of-state residents").

For these reasons, the Court does not need to make findings about the makeup of the potential class to conclude Plaintiffs cannot carry their burden of proving any CAFA exception applies.  Therefore, the Motion should be denied.

### C.   The Requested Discovery Is Unduly Burdensome, Premature, and Intrudes Upon the Personally Identifying Information of Non-Parties

Plaintiffs are requesting the names, telephone numbers, addresses, payment information, and travel histories of thousands of individuals who are not parties to this case and have not consented to the disclosure.  This type of information is inherently sensitive and subject to a high degree of protection.  *See generally Brooks*

*v. Peoples Bank*, 732 F. Supp. 3d 765, 779 (S.D. Ohio 2024) (defendant had a common law duty to protect its customers' personally identifying information from disclosure); *In re Numotion Data Incident Litig.*, No. 3:24-CV-00545, 2025 WL 57712, at *5 (M.D. Tenn. Jan. 9, 2025) (allegations that defendant had failed to protect customers and employees' personally identifying information from disclosure stated a common law cause of action).

Even if the Court needed to determine the makeup of the putative class to resolve Plaintiffs' anticipated motion to remand (and it does not), courts routinely make these kinds of determinations ***without*** compelling the kind of intrusive discovery Plaintiffs are demanding. *See, e.g., McCann v. W. Chester Hosp., LLC*, 233 F. Supp. 3d 607, 612-13 (S.D. Ohio 2017) (court could extrapolate from a sample of 27 "known plaintiffs" and conclude that "less than the two thirds" of putative class members were from the state where the action was commenced).

When Congress enacted CAFA, it made clear that it did not intend the statutory exceptions to entitle Plaintiffs to the kind of discovery they are seeking:

> Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions. ***For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list)***, in many instances a

14

> massive, burdensome undertaking that will not be necessary unless a proposed class is certified.

S. Rep. No. 109-14, at 42 (emphasis added); *see also Fluke v. Cashcall, Inc.*, No. CIV.A.08-5776, 2009 WL 637461, at *3-4 (E.D. Pa. Mar. 10, 2009) ("In light of this warning from Congress, we will decide this motion to remand based on the information readily available to us," and concluding "[b]ased on the readily available information, this court has subject matter jurisdiction over this action under CAFA."). Even outside the context of CAFA, "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients. . . ." *Dziennik*, 2006 WL 1455464, at *1.

At minimum, the requested discovery is premature, and Plaintiffs have failed to carry their burden "of showing good cause or need in order to justify deviation from the normal timing of discovery." *Gen. Ret. Sys. of the City of Detroit*, 2010 WL 2231885, at *3. For all the reasons set forth above, the Court can resolve any potential motion for remand without the need for personally identifying information about every putative class member. And if the Court does, for some reason, conclude that it requires this information, the parties can revisit this issue after discovery has proceeded in the ordinary course. *See Sweeney v. Federated Retail Holdings, Inc.*, No. 06-10887, 2006 WL 2521410, at *2 (E.D. Mich. Aug. 30, 2006) (holding CAFA jurisdiction sufficiently demonstrated "on the basis of [the] pleadings," but noting

that the parties, "of course, are permitted to again raise the issue of jurisdiction if appropriate as discovery progresses").

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Plaintiffs' Motion.

Dated: April 16, 2025

Respectfully submitted,

<u>*/s/ Benjamin W. Jeffers*</u>
Benjamin W. Jeffers
HICKEY HAUCK BISHOFF JEFFERS &
SEABOLT, PLLC
1 Woodward Ave Suite 2000
Detroit, MI 48226
T: (313) 964-8600 / F: (313) 964-8601
bjeffers@hhbjs.com

Elizabeth B. Herrington
Mohamed Awan
Michael W. Fakhoury
MORGAN, LEWIS & BOCKIUS LLP
101 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1445 / F: (312) 324-1001
beth.herrington@morganlewis.com
mohamed.awan@morganlewis.com
michael.fakhoury@morganlewis.com

Michael J. Ableson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
T: (212) 309-60000 / F: (212) 309-6001
michael.ableson@morganlewis.com

*Attorneys for Defendant, UBP Bay City, LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of April, 2025, I caused a copy of the

foregoing **Brief in Opposition To Plaintiffs' Motion For Early Discovery** to be

filed via ECF and served on all counsel of record.


<u>*/s/ Benjamin W. Jeffers*</u>
Benjamin W. Jeffers