## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | |
|---|---|
| WILLIAM HOWARD; JASON DUEMLER; NICOLE DUEMLER; ANN DUEMLER; MICHAEL LUTZ; SHERRI HOWELL; ROCHELLE JAMMER; and MARK KOHLHORST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBP BAY CITY, LLC d/b/a BAY CITY BRIDGE PARTNERS and CITY OF BAY CITY,<br><br>Defendants. | Case No. 1:25-cv-10926-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>**DEFENDANT UBP BAY CITY, LLC's MOTION TO DISMISS** |

Benjamin W. Jeffers
HICKEY HAUCK BISHOFF
JEFFERS & SEABOLT, PLLC
1 Woodward Ave Suite 2000
Detroit, MI 48226
Telephone: (313) 964-8600
bjeffers@hhbjs.com

Michael J. Ableson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-60000
michael.ableson@morganlewis.com

Elizabeth B. Herrington
Mohamed Awan
Michael W. Fakhoury
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
beth.herrington@morganlewis.com
mohamed.awan@morganlewis.com
michael.fakhoury@morganlewis.com

*Counsel for Defendant UBP Bay City, LLC*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant UBP Bay City, LLC, d/b/a Bay City Bridge Partners ("Defendant" or "UBP"), through its undersigned counsel, respectfully moves to dismiss Plaintiffs' Complaint (the "Complaint" or "Compl.") in its entirety because it fails to state a claim upon which relief can be granted.

On May 7, 2025, pursuant to Local Civil Rule 7.1(a), UBP's counsel sent a detailed email to counsel for Plaintiffs in which UBP's counsel explained the nature of the motion and the legal basis as to each individual argument and requested relief but did not obtain concurrence in the relief sought.

WHEREFORE, for these reasons and those stated more fully in the accompanying brief, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss the Complaint in its entirety and award any other relief to which UBP may be entitled, and the Court deems appropriate.

Dated: May 7, 2025                      Respectfully submitted,

                                        */s/ Benjamin W. Jeffers*
                                        Benjamin W. Jeffers

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | |
|---|---|
| WILLIAM HOWARD; JASON DUEMLER; NICOLE DUEMLER; ANN DUEMLER; MICHAEL LUTZ; SHERRI HOWELL; ROCHELLE JAMMER; and MARK KOHLHORST, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-10926-TLL-PTM<br><br>Hon. Thomas L. Ludington |
| Plaintiffs,<br><br>v.<br><br>UBP BAY CITY, LLC d/b/a BAY CITY BRIDGE PARTNERS and CITY OF BAY CITY,<br><br>Defendants. | **BRIEF IN SUPPORT OF DEFENDANT UBP BAY CITY, LLC's MOTION TO DISMISS** |

Benjamin W. Jeffers
HICKEY HAUCK BISHOFF
JEFFERS & SEABOLT, PLLC
1 Woodward Ave Suite 2000
Detroit, MI 48226
Telephone: (313) 964-8600
bjeffers@hhbjs.com

Michael J. Ableson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-60000
michael.ableson@morganlewis.com

Elizabeth B. Herrington
Mohamed Awan
Michael W. Fakhoury
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
beth.herrington@morganlewis.com
mohamed.awan@morganlewis.com
michael.fakhoury@morganlewis.com

*Counsel for Defendant UBP Bay City, LLC*

# TABLE OF CONTENTS

EXHIBIT INDEX ................................................................................. ii

STATEMENT OF ISSUES PRESENTED............................................. iii

STATEMENT OF CONTROLLING AUTHORITY...............................v

TABLE OF AUTHORITIES ...............................................................vi

PRELIMINARY STATEMENT ............................................................1

RELEVANT FACTUAL BACKGROUND.............................................4

LEGAL STANDARD............................................................................6

ARGUMENT ........................................................................................7

    I.     Plaintiffs Cannot State a Private Right of Action Under the
          Public Trust Doctrine. ...........................................................7

    II.    Plaintiffs Are Not Third-Party Beneficiaries of the Agreement
          and Have No Standing to Enforce Its Terms. ......................................8

    III.   Plaintiffs Lack Standing to Enforce the Agreement as a Non-
          Party, and Their Attempt to Manufacture a Separate "Contract"
          Based on a Marketing Slogan Fails as Matter of Law. .......................10

    IV.   Plaintiffs' Implied Contract Claim Should Be Dismissed
          Because Plaintiffs Fail to Adequately Plead an Enforceable
          Implied Contract or Damages. ............................................13

    V.    Plaintiffs Fail to Adequately Plead an Unjust Enrichment
          Claim. ....................................................................................16

    VI.   Plaintiffs Have Not Plead a Cognizable Claim Under the
          Michigan Consumer Protection Act...................................18

    VII.  Plaintiffs' Count for "Injunctive Relief" is Not a Cause of
          Action. ..................................................................................20

CONCLUSION ...................................................................................22

# **EXHIBIT INDEX**

- **Exhibit A**—Unpublished Decisions

## STATEMENT OF ISSUES PRESENTED

1.    Should this Court dismiss Plaintiffs' claim for Violation of Public Trust Principles (Count I) against UBP because the Michigan public trust doctrine does not provide Plaintiffs with a private right to action against contracting parties?

Defendant UBP says:  Yes.

2.    Should this Court dismiss Plaintiffs' claim for Third-Party Beneficiary Claim – Breach of Contract (Count II) against UBP because Plaintiffs are not the intended third-party beneficiaries of any contract between UBP and the City of Bay City?

Defendant UBP says:  Yes.

3.    Should this Court dismiss Plaintiffs' claim for Breach of Contract (Count III) against UBP because Plaintiffs lack standing to enforce any contract between UBP and the City of Bay City as a non-party, and they have not plead any damages that were proximately caused by any breach?

Defendant UBP says:  Yes.

4.    Should this Court dismiss Plaintiffs' claim for Breach of Implied Contract (Count IV) against UBP because Plaintiffs fail to plead any facts that support the existence of any implied contract and any implied contract would be barred by the statute of frauds?

Defendant UBP says: Yes.

5. Should this Court dismiss Plaintiffs' Unjust Enrichment claim (Count V) against UBP because it is barred by the existence of a contract governing the subject matter of the claim and by the availability of legal remedies?

Defendant UBP says: Yes.

6. Should this Court dismiss Plaintiffs' Violation of Michigan Consumer Protection Act (MCPA) claim (Count VI) against UBP because UBP's operation of the Independence Bridge in Bay City, Michigan is authorized by state and federal law, and the Complaint contains no misrepresentations or omissions allegedly committed by UBP that form that basis of a statutory fraud claim?

Defendant UBP says: Yes.

7. Should this Court dismiss Plaintiffs' Injunctive Relief claim (Count VII) against UBP because injunctive relief is a remedy, not an independent cause of action?

Defendant UBP says: Yes.

## STATEMENT OF CONTROLLING AUTHORITY

Pursuant to Local Rule 7.1(d)(2), Defendant UBP states that the following authorities are the controlling or most appropriate authorities for the relief requested by this Motion:

- Federal Rule of Civil Procedure 12(b)(6)

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

- *Glass v. Goeckel*, 473 Mich. 667, 703 N.W.2d 58 (2005)

- *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 670 N.W.2d 651 (2003)

- *Koenig v. City of S. Haven*, 460 Mich. 667, 597 N.W.2d 99 (1999)

- *Greenlees v. Owen Ames Kimball Co.*, 340 Mich. 670, 66 N.W.2d 227 (1954)

- *Alan Custom Homes, Inc. v. Krol*, 256 Mich.App. 505, 667 N.W.2d 379 (2003)

- *AFT Michigan v. Michigan*, 303 Mich.App. 651, 846 N.W.2d 583 (2014)

- *Lochridge v. Quality Temp. Servs., Inc.*, 2023 WL 4303577 (E.D. Mich. June 30, 2023)

- *Convergent Grp. Corp. v. Cnty. of Kent*, 266 F. Supp. 2d 647 (W.D. Mich. 2003)

- *A & M Supply Co. v. Microsoft Corp.*, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)

- *Sanderson v. HCA-The Healthcare Co*., 447 F.3d 873 (6th Cir. 2006)

- *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

- *Montgomery v. Kraft Foods Glob*., *Inc.*, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016)

- *Riley-Jackson v. Ocwen Loan Servicing, LLC*, 2013 WL 5676827 (E.D. Mich. Oct. 18, 2013)

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*A & M Supply Co. v. Microsoft Corp.*,
2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) ............................................17

*AFT Michigan v. Michigan*,
303 Mich. App. 651, 846 N.W.2d 583 (2014)....................................................13

*Alan Custom Homes, Inc. v. Krol*,
256 Mich.App. 505, 667 N.W.2d 379 (2003)...............................................13, 16

*Allstate Imaging, Inc. v. First Indep. Bank*,
2010 WL 1524058 (E.D. Mich. Apr. 15, 2010) ..................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................6, 12

*Ashland, Inc. v. Oppenheimer & Co.*,
648 F.3d 461 (6th Cir. 2011) ..............................................................................11

*Binno v. Am. Bar Ass'n*,
826 F.3d 338 (6th Cir. 2016) ..............................................................................21

*Bott v. Comm'n of Nat. Res.*,
415 Mich. 45 (1982) .............................................................................................8

*Brunsell v. City of Zeeland*,
467 Mich. 293, 651 N.W.2d 388 (2002)...............................................................9

*Cheydleur v. Hills*,
415 F. Supp. 451 (E.D. Mich. 1976) ..................................................................12

*Chrysler Corp. v. Skyline Indus. Servs., Inc.*,
448 Mich. 113, 528 N.W.2d 698 (1995)...............................................................6

*Coffman v. Breeze Corp.*,
323 U.S. 316 (1945).............................................................................................21

*Convergent Grp. Corp. v. Cnty. of Kent*,
266 F. Supp. 2d 647 (W.D. Mich. 2003).......................................................16, 17

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)...............................................................................................21

*Decker v. City of Wyandotte*,
   2002 WL 31956958 (Mich. Ct. App. Dec. 20, 2002)...........................................14

*Dumas v. Auto Club Ins Ass'n*,
   437 Mich. 521, 473 N.W.2d 652 (1991)...............................................................17

*Eerdmans v. Maki*,
   226 Mich. App. 360; 573 N.W.2d 329 (1997) ....................................................12

*Evans-Marshall v. Board of Education*,
   428 F.3d 223 (6th Cir. 2005) .................................................................................6

*Eyde v. Empire of Am. Fed. Sav. Bank*,
   701 F.Supp. 126 (E.D. Mich. 1988) ....................................................................18

*Glass v. Goeckel*,
   473 Mich. 667, 703 N.W.2d 58 (2005)..............................................................7, 8

*Glob. Crossing Telecomms., Inc. v. Michigan Bell Tel. Co.*,
   2010 WL 2011502 (E.D. Mich. May 17, 2010) ..................................................18

*Gordon v. Chipotle Mexican Grill, Inc.*,
   344 F. Supp. 3d 1231 (D. Colo. 2018).................................................................18

*Greenlees v. Owen Ames Kimball Co.*,
   340 Mich. 670, 66 N.W.2d 227 (1954)...............................................................10

*Gregory v. Shelby County*,
   220 F.3d 433 (6th Cir. 2000) .................................................................................6

*Henry v. Dow Chem. Co.*,
   473 Mich. 63, 701 N.W.2d 684 (2005)...............................................................21

*Huntington Nat'l Bank v. Daniel J. Aronoff Living Tr.*,
   305 Mich.App. 496, 853 N.W.2d 481 (2014)......................................................14

*Kamalnath v. Mercy Mem'l Hosp. Corp.*,
   194 Mich.App. 543, 487 N.W.2d 499 (1992)......................................................14

*Kingen v. Warner Norcross*
   *+ Judd LLP*, 2023 WL 8544231 (W.D. Mich. Oct. 4, 2023) ............................ 15

*Koenig v. City of S. Haven*,
   460 Mich. 667, 597 N.W.2d 99 (1999) ............................................................ 10

*Leonard v. Pepsico, Inc.*,
   88 F. Supp. 2d 116 (S.D.N.Y. 1999) ................................................................ 11

*Liss v. Lewiston-Richards, Inc.*,
   478 Mich. 203, 732 N.W.2d 514 (2007) ........................................................... 19

*Lochridge v. Quality Temp. Servs., Inc.*,
   2023 WL 4303577 (E.D. Mich. June 30, 2023) ................................................ 14

*Matanky v. Gen. Motors LLC*,
   370 F. Supp. 3d 772, 799 (E.D. Mich. 2019) ................................................... 19

*Miller v. Sodak Gaming, Inc.*,
   93 F. App'x 847 (6th Cir. 2004) ....................................................................... 16

*Montgomery v. Kraft Foods Glob., Inc.*,
   2012 WL 6084167 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304
   (6th Cir. 2016) .................................................................................................. 20

*Montgomery v. Wyeth*,
   580 F.3d 455 (6th Cir. 2009) .............................................................................. 6

*Nedtweg v. Wallace*,
   237 Mich. 14, 208 N.W. 51 (1926) ..................................................................... 8

*Pawlak v. Redox Corp.*,
   182 Mich.App. 758, 453 N.W.2d 304 (1990) ................................................... 13

*Perry v. Se. Boll Weevil Eradication Found.*,
   154 F. App'x 467 (6th Cir. 2005) ..................................................................... 21

*Police & Fire Ret. Sys. of the City of Detroit v. Watkins*,
   2009 WL 3210922 (E.D. Mich. Sept. 30, 2009) .............................................. 10

*Ralph Roberts Realty, LLC v. Tyson*,
   2019 WL 6248354 (Mich. Ct. App. Nov. 21, 2019) ......................................... 15

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) .................................................................................. 19

*Riley-Jackson v. Ocwen Loan Servicing, LLC*,
  2013 WL 5676827 (E.D. Mich. Oct. 18, 2013) .................................................... 20

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
  2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) .................................................... 19

*Sanderson v. HCA-The Healthcare Co.*,
  447 F.3d 873 (6th Cir. 2006) .................................................................................. 19

*Schmalfeldt v. N. Pointe Ins. Co.*,
  469 Mich. 422, 670 N.W.2d 651 (2003) .................................................................. 9

*SFS Check, LLC v. First Bank of Del.*,
  774 F.3d 351 (6th Cir. 2014) .................................................................................... 7

*Tate v. EyeMed Vision Care, LLC*,
  2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) .................................................... 18

*Terlecki v. Stewart*,
  278 Mich.App. 644, 754 N.W.2d 899 (2008) ................................................ 20, 21

*Ware v. Bronson Methodist Hosp.*,
  2014 WL 5689877 (Mich. Ct. App. Nov. 4, 2014) ............................................. 15

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
  900 F.3d 250 (6th Cir. 2018) .................................................................................. 21

**Statutes**

Mich. Comp. Laws § 324.32502 ............................................................................... 7, 8

Mich. Comp. Laws § 445.901 ................................................................................... 3, 18

Mich. Comp. Laws § 445.904(1)(a) ........................................................................... 19

Mich. Comp. Laws § 566.132(1) ................................................................................ 15

Mich. Comp. Laws § 600.1405 ..................................................................................... 9

## Rules

Fed. R. Civ. P. 9(b) ................................................................................................18

Fed. R. Civ. P. 12(b)(6)............................................................................................6

## Other Authorities

1 E. Farnsworth, *Contracts*, § 310 (3d ed. 2004).....................................................11

Restatement (Second) of Conflict of Laws §188(1)..................................................7

Restatement (Second) of Contracts § 26..................................................................11

## PRELIMINARY STATEMENT

Federal courts are tasked with deciding real cases and controversies—not policy disputes or media spectacles dressed up as legal claims. Plaintiffs are in court not because they have enforceable rights against UBP Bay City, LLC d/b/a Bay City Bridge Partners ("UBP"), but because they disagree with Bay City, Michigan's decision about a bridge located in the City. That bridge, the Independence Bridge (the "Bridge"), is a critical piece of local infrastructure that facilitates economic activity and connects the eastern and western halves of the City. In recent years, the Bridge began to deteriorate due to lack of upkeep. This was compounded by years of budget cuts and underfunding, which further drove it into disrepair. By 2020, the City, as owner and operator of the Bridge, could neither afford to maintain it nor ensure safe passage on it. Without assistance from an outside partner, the City would be unable to save the Bridge. It found one in UBP.

In 2020, UBP and the City entered into a Concession and Lease Agreement (the "Agreement"), pursuant to which UBP would undertake substantial rehabilitation work on the Bridge over the course of several years. Because the City could not afford to pay UBP for the work, both parties agreed to an alternative funding mechanism—upon UBP substantially completing the Bridge rehabilitation, it would receive the right to collect tolls from vehicles using the Bridge for a period

of 75 years. Consistent with its rights under the Agreement, upon the Bridge being substantially complete by August 2024, UBP finally began tolling in January 2025.

Not everyone was happy about this. Plaintiffs, a group of motorists who paid a toll or purchased a monthly pass and crossed the Bridge between January 1, 2025 and March 1, 2025, claim that it was unlawful for UBP to begin tolling in January 2025. Plaintiffs argue that UBP should not have charged any tolls (in other words, free crossings should have continued) if any sporadic closures of the Bridge occurred for even minor follow-up work, although the Agreement permitted UBP to begin tolling once the work was substantially complete. Plaintiffs are oddly attempting to assert rights under the Agreement—a contract that Plaintiffs did not sign, are not parties to, and under which they have no standing to sue.

Lacking any direct contractual interest, Plaintiffs simply try to invent one. They claim a slogan that UBP uses to advertise its monthly toll passes —"Save Time, Save Money"—constitutes a binding offer, that Plaintiffs accepted the offer by purchasing monthly passes, and that this somehow gives them standing to enforce a different agreement between UBP and the City. That is not contract law—it is legal fiction.

Plaintiffs' Complaint asserts seven causes of action—none of which withstand scrutiny. Each claim fails as a matter of law for reasons that include the following:

-2-

- **The Violation of Public Trust Principles claim** (Count I) fails because the doctrine does not provide private plaintiffs with a right to sue private contracting parties like UBP. It is a doctrine grounded in the State of Michigan's obligation to protect natural resources—not a private enforcement mechanism.

- **The Third-Party Beneficiary and Breach of Contract claims** (Counts II and III) fail because Plaintiffs are not signatories or intended third-party beneficiaries of the Agreement and fail to allege that any alleged damages were the proximate result of any supposed breach.

- **The Implied Contract claim** (Count IV) fails because Plaintiffs fail to plead any facts to support the existence of any implied contract, because the alleged implied contract is barred by the statute of frauds, and Plaintiffs fail to allege any damages that were the proximate result of any breach.

- **The Unjust Enrichment claim** (Count V) is barred by, among other reasons, the existence of a valid contract governing the subject matter and by the availability of legal remedies.

- **The MCPA claim** (Count VI) fails because UBP's operation of the Bridge is authorized by state and federal law, and the Complaint contains no misrepresentations or omissions allegedly committed by UBP that form the basis of a statutory fraud claim.

- **The Injunctive Relief claim** (Count VII) fails, for among other reasons, because injunctive relief is a remedy, not an independent cause of action.

*       *       *

Plaintiffs lack standing, misstate the law, and are challenged in understanding and interpreting a straightforward Agreement by asserting claims against UBP without any viable legal foundation. Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

## RELEVANT FACTUAL BACKGROUND

The Bridge is a bascule bridge (commonly known as a "drawbridge") built in 1976. *See generally* Compl. ¶¶ 18-19, 85. It was operated by the City, but due to a lack of municipal funding in recent years, the City "determined it could no longer sustain the cost of maintaining and operating [the Bridge] while also providing free access to non-residents who used [it] regularly." *Id*. ¶ 25. Without routine repairs or maintenance, the Bridge quickly fell into a state of disrepair. *Id*. ¶¶ 23, 24. To save the Bridge, the City would eventually turn to UBP, an affiliate of the United Bridge Partners corporate family, which designs, builds, owns, and operates transportation infrastructure across the United States.

On May 1, 2023, UBP entered into the Agreement. Under the Agreement's terms, UBP undertook responsibility for the "modernization, upgrade and rehabilitation" of the Bridge, as well as its maintenance and operation for the next

75 years. Compl., Ex. 1 at 1. UBP would eventually spend over \$100 million between 2020 and 2024 to repair, rehabilitate, and modernize the Bridge—none of which was paid for by the City. *Id*. at 1. Indeed, the City desperately wanted to keep the Bridge open because—but for UBP's investment, design, construction, and operation of the bridges—the Bridge would have been shut down permanently for safety reasons, as it was in serious disrepair, leaving city residents and the surrounding community without an option to use it. As consideration for its modernization work, UBP was entitled to collect tolls from drivers using the Bridge, subject to certain restrictions. *See id*. § 18. For example, UBP and the City agreed no tolls would be collected until the Bridge had been "open and operational for use by the public for highway purposes, 24 hours a day, in the ordinary course for thirty consecutive (30) days" (defined as "Completion"), and that no tolls would be collected from residents of the City in non-commercial vehicles for five years following Completion. *See id*. §§ 16, 18; *see also id*. at Exhibit C.

On January 1, 2025, with Completion having occurred the previous year, UBP began to collect tolls from non-City residents for use of the Bridge. *See* Compl. ¶ 76. Plaintiffs filed this action against UBP and the City just two months later. Plaintiffs were allegedly charged tolls for using the Bridge on or after January 1, 2025 and seek to represent a class of "all non-Bay City residents and drivers who have crossed the Independence Bridge and paid any toll or purchased an unlimited

pass [for use of the bridge]." *See id*. ¶¶ 7-13. Plaintiffs allege seven causes of action against UBP, seeking extensive monetary and injunctive relief. *See id*. ¶¶ 112, 122, 129-130, 143, 153, 160, 165.

## LEGAL STANDARD

When considering a motion under Federal Rule of Civil Procedure 12(b)(6), the Court construes well-pleaded factual allegations in the light most favorable to the plaintiff, *Evans-Marshall v. Board of Education*, 428 F.3d 223, 228 (6th Cir. 2005), but "need not accept as true legal conclusions or unwarranted factual inferences," *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). Indeed, "naked assertions devoid of further factual enhancement" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *See Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). "Because suit was filed in Michigan, Michigan law presumptively applies." *Allstate Imaging, Inc. v. First Indep. Bank*, 2010 WL 1524058, at *1 (E.D. Mich. Apr. 15, 2010). In actions based in contract, Michigan courts apply §§187–88 of the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc*., 448 Mich. 113, 528 N.W.2d 698 (1995). Where the parties have not agreed upon the applicable law,

§188 requires courts to apply "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws §188(1).  Here, that is Michigan.

**ARGUMENT**

Each of Plaintiffs' claims suffers from threshold pleading deficiencies that warrant dismissal as a matter of law.  Because the allegations in the Complaint make plain that these defects cannot be cured, all of Plaintiffs' claims should be dismissed in their entirety with prejudice.  *See, e.g., SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) ("[C]ourts need not give leave to amend when doing so would be futile").

**I.   Plaintiffs Cannot State a Private Right of Action Under the Public Trust Doctrine.**

In Count I, Plaintiffs claim that UBP violated Michigan's public trust doctrine, MCL § 324.32502, which generally provides that certain natural resources—*i.e*., the Great Lakes and their adjacent lands—must be held in trust by the State for the benefit of its citizens.  The doctrine requires the State of Michigan—***not private plaintiffs***—to protect and preserve the lands along the shores of the Great Lakes for the use of future generations for the benefit of the public.  *See Glass v. Goeckel*, 473 Mich. 667, 674-79, 703 N.W.2d 58, 62-65 (2005) ("under longstanding principles of Michigan's common law, the state, as sovereign, has an obligation to protect and preserve" and "cannot relinquish this duty to preserve public rights.").   Rights

-7-

protected by the doctrine include fishing, swimming, boating, bathing, beach walking, and the like.  *See* MCL § 324.32502.

Plaintiffs fail to identify or allege any facts showing any actions by UBP that violates Michigan's public trust doctrine.  But the Court need not even reach that issue, because Plaintiffs cannot bring a private right of action under the public trust doctrine.  *See Glass*, 473 Mich. at 674-79, 703 N.W.2d at 62-65; *Nedtweg v. Wallace*, 237 Mich 14, 17, 208 N.W. 51, 53 (1926); *Bott v. Comm'n of Nat. Res.*, 415 Mich. 45 (1982).  The State of Michigan is the sole party able to seek non-individualized, or public, remedies for alleged harms.  *See id*.  Therefore, Plaintiffs' claim for violation of the public trust doctrine fails as a matter of law.

## II.   Plaintiffs Are Not Third-Party Beneficiaries of the Agreement and Have No Standing to Enforce Its Terms.

In Count II, Plaintiffs assert a claim against UBP for breach of the Agreement with the City and allege that, despite being non-parties to the Agreement, Plaintiffs can enforce its terms because they are its third-party beneficiaries.  *See* Compl. ¶ 114 ("Plaintiffs, including the Proposed Class, are third-party beneficiaries of the contractual agreement between the City of Bay City. . .").  Under Michigan law, allowing third parties to enforce a purported contract is the exception, not the rule. "[O]nly intended, not incidental, third-party beneficiaries may sue for breach of a contractual promise in their favor."  *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 427-28, 670 N.W.2d 651, 654 (2003).

-8-

Plaintiffs' conclusory allegations do not establish third-party beneficiary status and cannot sustain their claim because they provide no indication that Plaintiffs were ***intended*** third-party beneficiaries of the Agreement between UBP and the City.  Although Plaintiffs allege, in conclusory fashion, that the Agreement "was expressly entered into for the benefit of the public, including residents, commuters, and visitors who rely on the Independence Bridge for travel, commerce, commuting, and other activities," Compl. ¶ 115, Plaintiffs do not (and cannot) identify any specific language in the Agreement itself indicating that Plaintiffs were intended third-party beneficiaries.

The Agreement primarily benefits the contracting parties (the City and UBP), and Plaintiffs are (at very most) ***incidental*** beneficiaries lacking any right to sue for contract benefits. *See Schmalfeldt*, 469 Mich. at 429, 670 N.W.2d at 655. To determine whether contracting parties intended to benefit a non-signatory third party, the parties must actually and clearly express "that a promisor has undertaken a promise 'directly' to or for that person." *Id*. at 654 (citing Mich. Comp. Laws § 600.1405).  Importantly, "the plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise. . ." *Brunsell v. City of Zeeland*, 467 Mich. 293, 296, 651 N.W.2d 388, 390 (2002).  By using the modifier "directly," the Michigan Legislature intended "to assure that contracting parties are clearly aware that the scope of their

contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Koenig v. City of S. Haven*, 460 Mich. 667, 676, 597 N.W.2d 99, 104 (1999). Because Plaintiffs do not and cannot plausibly allege that the Agreement was executed "directly" for or on their behalf, their third-party beneficiary claim fails as a matter of law.

### III. Plaintiffs Lack Standing to Enforce the Agreement as a Non-Party, and Their Attempt to Manufacture a Separate "Contract" Based on a Marketing Slogan Fails as Matter of Law.

In Count III, Plaintiffs assert a contract claim against UBP, claiming that it breached Sections 16 and 18 of the Agreement by prematurely collecting tolls. *See* Compl. ¶ 126. But, as Plaintiffs themselves concede, they are not parties to the Agreement (*see id*. ¶¶ 27, 34, 73), and thus have no right or standing to enforce the terms of the Agreement against UBP. *See Greenlees v. Owen Ames Kimball Co.*, 340 Mich. 670, 674, 66 N.W.2d 227, 229 (1954) (non-signatory seeking to enforce terms of agreement must show privity or third-party beneficiary status to maintain a breach claim); *Police & Fire Ret. Sys. of the City of Detroit v. Watkins*, 2009 WL 3210922, at \*5 (E.D. Mich. Sept. 30, 2009) (dismissing contract claim where the defendant/counter-plaintiff was not a named party to agreement and there was no evidence that it was ever intended to be a party to the agreement).

Recognizing the futility in trying to enforce an agreement as a non-party, Plaintiffs pivot to the far-fetched theory that UBP's promotional slogan—"Save

Time, Save Money"—used in advertising its monthly toll pass, constituted a binding

contractual offer that Plaintiffs allegedly "accepted" by purchasing the passes. From

there, Plaintiffs take another giant leap by theorizing that the "Save Time, Save

Money" slogan, together with Plaintiffs' purchases of the passes, created an

enforceable *express* contract,[1] and that this somehow gives Plaintiffs the legal

footing to enforce the entirely separate Agreement between UBP and the City.

Plaintiffs' theory is legally untenable for at least three reasons. First, a

marketing slogan is not a contractual offer. Courts consistently hold that general

advertisements, proposals, or promotional language presented to the public are not

offers that can be unilaterally accepted and made binding, but mere invitations to

negotiate. *See* 1 E. Farnsworth, *Contracts*, § 310, p. 260-61, and n.30 (3d ed. 2004);

Restatement (Second) of Contracts § 26 (explaining that advertising and solicitations

are "not ordinarily intended or understood as offers"); *Leonard v. Pepsico, Inc.*, 88

F. Supp. 2d 116, 123 (S.D.N.Y. 1999) (holding that advertisements are not offers,

---

[1] While there is a Terms and Conditions agreement between UBP and Plaintiffs, which is publicly available online, this agreement is not the subject of this lawsuit, nor do Plaintiffs allege that this agreement forms the basis of any of their claims. https://baycitybridgepartners.com/storage/2025/01/BC-PASS_Ts-and-Cs_v3_01032025.pdf; *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (on motion to dismiss, in addition to the allegations in the complaint, courts may consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice (citation omitted)). Rather, Plaintiffs admit that their claims are based solely upon the Agreement between UBP and the City of Bay City.

but "invitation[s] to [ ] make an offer"); *Eerdmans v. Maki*, 226 Mich. App. 360; 573 N.W.2d 329 (1997) (rejecting argument that advertisement constituted offer); *Cheydleur v. Hills*, 415 F. Supp. 451 (E.D. Mich. 1976) (same). There is no specificity, no essential terms, and no clear intent to be bound—only the sort of "puffery" that is common to commercial advertising.

Second, Plaintiffs cannot plead their way around this with mere legal conclusions. In their Complaint, Plaintiffs declare by fiat that a contract was formed in the manner described above. *See* Compl. ¶ 125 ("By virtue of this offer and Plaintiffs' acceptance, an express contract was formed between [UBP] and its customers"). But merely saying that an offer was made and accepted does not make it so. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs have not alleged—and cannot allege—facts showing that UBP's advertisement was intended to form a contract or that it contained the requisite material terms to support one.

Third, even if a valid contract arose from UBP's promotional materials (which it did not), that would still get Plaintiffs nowhere. Any such contract would, at most, govern the terms of Plaintiffs' purported toll pass purchases—it would not magically confer standing on Plaintiffs to enforce the separate and unrelated Agreement between UBP and the City. This theory fails both logically and legally.

-12-

Additionally, even if these promotional materials were found to form a "contract," Plaintiffs fail to plead any cognizable damages or that any such damages were a proximate result of a breach of the purported contract. Plaintiffs must assert damages with "reasonable certainty and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc. v. Krol*, 256 Mich.App. 505, 512, 667 N.W.2d 379, 383 (2003).

In short, Plaintiffs cannot enter through the front door (as parties), the side door (as third-party beneficiaries), or the back door (through marketing puffery dressed up as contract law). Their theory is not a clever workaround—it is an outright circumvention of fundamental principles of contract formation.

## IV.   Plaintiffs' Implied Contract Claim Should Be Dismissed Because Plaintiffs Fail to Adequately Plead an Enforceable Implied Contract or Damages.

In Count IV, Plaintiffs allege that UBP breached an implied contract. Under Michigan law, an implied-in-law contract "is a legal fiction 'to enable justice be accomplished' even if there was no meeting of the minds and no contract was intended." *AFT Michigan v. Michigan*, 303 Mich.App. 651, 660, 846 N.W.2d 583, 590 (2014) (citation omitted). Importantly, an implied contract "must still satisfy the elements of mutual assent and consideration." *Pawlak v. Redox Corp.*, 182 Mich.App. 758, 765, 453 N.W.2d 304, 307 (1990) (noting that even a preexisting duty was insufficient to satisfy the essential element of consideration needed to

create an enforceable contract).  "It is hornbook law that a valid contract requires a 'meeting of the minds' on all the essential terms." *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich.App. 543, 547, 487 N.W.2d 499, 503 (1992) (citation omitted).

Plaintiffs' breach of implied contract claim fails because Plaintiffs do not, and cannot, adequately plead any of the requisite elements and, even if an implied contract existed, it would be barred by the statute of frauds.  Plaintiffs also fail to plead any cognizable damages that were a proximate result of a breach of the purported contract.

First, Plaintiffs fail to plausibly allege any facts showing the existence of an implied contract.  Where, as here, no explicit contract exists between the parties, "an implied contract may arise from their conduct, language, or other circumstances evidencing their intent to contract." *Lochridge v. Quality Temp. Servs., Inc.*, 2023 WL 4303577, at *7 (E.D. Mich. June 30, 2023).  Courts determine whether parties mutually assented to an alleged implied contract by objectively examining "the express words of the parties and their visible acts" to determine whether "[a] meeting of the minds [has] occur[ed] on all the material facts." *Decker v. City of Wyandotte*, 2002 WL 31956958, at *6 (Mich. Ct. App. Dec. 20, 2002) (citation omitted). "Michigan courts will not lightly presume the existence of an enforceable contract because, 'regardless of the equities in a case, the courts cannot make a contract for

-14-

the parties when none exists.'" *Huntington Nat'l Bank v. Daniel J. Aronoff Living Tr.*, 305 Mich.App. 496, 508, 853 N.W.2d 481, 488 (2014) (citation omitted).

Plaintiffs fail this baseline requirement. They assert, without support, that "in exchange for paying tolls and/or purchasing an unlimited crossing pass(es), BCBP would provide continuous, reliable access to the bridge 24 hours per day, 7 days per week." Compl. ¶ 134. But these alleged terms are from UBP's Agreement with the City, not Plaintiffs. Plaintiffs assert no objective facts establishing UBP's alleged agreement with Plaintiffs. Courts have rejected breach of implied contract claims premised on similar conclusory allegations. *See, e.g., Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363, at \*6 (W.D. Mich. Oct. 5, 2023) (dismissing claim where plaintiffs failed to allege concrete examples of defendant's assent to the purported contract or any specific terms). The same result should follow here.

Second, even if Plaintiffs could adequately allege the existence of an implied contract, it would be barred by the statute of frauds. Under Michigan law, contracts that cannot be completed within one year of formation must be "in writing and signed with an authorized signature by the party" to the contract. *See* Mich. Comp. Laws § 566.132(1); *see also Ralph Roberts Realty, LLC v. Tyson*, 2019 WL 6248354, at \*3 (Mich. Ct. App. Nov. 21, 2019). Michigan's statute of frauds applies equally to implied contracts. *See, e.g., Ware v. Bronson Methodist Hosp.*, 2014 WL

-15-

5689877, at *7 (Mich. Ct. App. Nov. 4, 2014) (holding breach of implied contract claim was barred by statute of frauds).

Finally, Plaintiffs fail to plead any cognizable damages or that any such damages were a proximate result of a breach of the purported contract.  Plaintiffs must assert damages with "reasonable certainty and may recover only those damages that are the direct, natural, and proximate result of the breach."  *Alan Custom Homes*, 256 Mich.App. at 512, 667 N.W.2d at 383.  Because Plaintiffs have not alleged a sufficient nexus between UBP's alleged misconduct and their purported injuries, resulting in their alleged damages, their breach of implied contract claims should be dismissed.

## V.    Plaintiffs Fail to Adequately Plead an Unjust Enrichment Claim.

Plaintiffs assert a claim for unjust enrichment in Count V. An unjust enrichment claim requires that "(1) the defendant received a benefit from the plaintiff; and (2) an inequity will result because of the defendant's retention of the benefit."  *Convergent Grp. Corp. v. Cnty. of Kent*, 266 F. Supp. 2d 647, 661 (W.D. Mich. 2003); *Miller v. Sodak Gaming, Inc.*, 93 F. App'x 847, 851 (6th Cir. 2004) (granting summary judgment on unjust enrichment claim where "there is no concern about [plaintiff] suffering injustice").  "Under those circumstances, the law will imply a contract in order to prevent unjust enrichment"—but only where "there is no express contract covering the same subject matter."  *Convergent Grp.*, 266 F.

-16-

Supp. 2d at 661 (internal quotation marks and citations omitted).  Michigan courts employ the doctrine of unjust enrichment sparingly because it is based in *quasi-contract*—a "legal fiction" that "vitiates normal contract principles," thus warranting cautious application.  *A & M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at \*2 (Mich. Ct. App. Feb. 28, 2008) (citation omitted).

Plaintiffs' unjust enrichment claim fails for at least three reasons.  First, there is an alleged express contract—the Agreement—covering the same subject matter forming the basis of the unjust enrichment claim.  *See* Compl. ¶ 125 ("an express contract was formed between [UBP] and its customers"); ¶ 128 ("[UBP]'s conduct constitutes a material breach of the express contract"); ¶ 130 ("Plaintiffs seek all available remedies . . . and damages arising from [UBP]'s failure to honor the express contract); ¶ 131 ("[UBP]'s actions constitute breach of express contract").  Indeed, Plaintiffs argue the Agreement is a valid and enforceable contract to support their claim that they are third-party beneficiaries of the Agreement. This leads to inconsistency in Plaintiffs' positions, as their unjust enrichment claim requires the ***absence*** of any express contract.  *See Convergent Grp.*, 266 F. Supp. 2d at 661. Plaintiffs cannot use an "express contract" as a sword to plead a breach of contract claim and a shield to plead an unjust enrichment claim.  *See Dumas v. Auto Club Ins Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652, 663 (1991).

Second, equitable relief in the form of an unjust enrichment claim is not available where an adequate legal remedy exists. *See Glob. Crossing Telecomms., Inc. v. Michigan Bell Tel. Co.*, 2010 WL 2011502, at *4 (E.D. Mich. May 17, 2010). Plaintiffs bear the burden of showing the lack of an adequate remedy at law. *See Eyde v. Empire of Am. Fed. Sav. Bank*, 701 F.Supp. 126, 130 (E.D. Mich. 1988). They fail to plead or otherwise allege facts showing that they had no adequate means of pursuing relief other than through their unjust enrichment theory.

Finally, Plaintiffs' unjust enrichment claim fails because they paid the toll and received what they paid for—*i.e.*, passage on the Bridge—and "a traditional exchange of payment for goods and services is not a circumstance in which it is 'unjust' to allow the defendant to retain the benefit." *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023) (citing *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) ("Plaintiffs paid for burritos; Plaintiffs received burritos.")). Even if Plaintiffs could otherwise allege a claim for unjust enrichment, it would fail for lack of any damages. Plaintiffs fail to plead facts alleging UBP's conduct was "unjust," as required to sustain a claim.

## VI. Plaintiffs Have Not Plead a Cognizable Claim Under the Michigan Consumer Protection Act.

In Count VI, Plaintiffs claim that UBP violated the Michigan Consumer Protection Act (MCPA). Because this claim sounds in fraud, Plaintiffs "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This

-18-

requires plaintiffs to "allege the time, place, and content of the alleged misrepresentations [or omissions] on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quotation omitted); *see also Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012). Plaintiffs' MCPA claim fails to allege any actionable misrepresentation or omission, reliance, or materiality for three primary reasons.

First, the MCPA does not apply to transactions "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a); *see Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210, 732 N.W.2d 514, 518 (2007). "The Michigan Supreme Court construes this exemption broadly, finding that 'the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799 (E.D. Mich. 2019) (quoting *Liss*, 478 Mich. 293, 732 N.W.2d 514). Since federal and state law authorize UBP to operate the Bridge, Plaintiffs cannot bring an MCPA claim based on allegations that UBP engaged in unfair or deceptive practices by purportedly misrepresenting a term outlined in the Agreement. *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016); *Matanky*, 370 F. Supp. 3d at 800.

-19-

Second, Plaintiffs fail to plead the specific factual content necessary to support a fraud-based claim under the MCPA.  To do so, Plaintiffs must plausibly allege (1) that UBP was "engaged in commerce within the meaning of the Act," (2) that the MCPA prohibited UBP's conduct, and (3) that they suffered a loss. *Montgomery v. Kraft Foods Glob.*, *Inc.*, 2012 WL 6084167, at \*4 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016).  The Complaint, however, contains no allegations whatsoever describing any misrepresentation or omission—much less specific factual allegations describing, with particularity, the specific fraudulent acts allegedly committed by UBP that form the basis of a statutory fraud claim.  It was not even possible for UBP to have done so, since it is undisputed that UBP had no direct interactions with Plaintiffs—and thus could not have made *any* representations to them, including misrepresentations.  Accordingly, Plaintiffs cannot sustain their claims under MCPA subsections (c), (e), (i), (bb), and (cc) —all of which require affirmative misrepresentations by UBP.  Their claim under the MCPA fails and should be dismissed.

## VII.  Plaintiffs' Count for "Injunctive Relief" is Not a Cause of Action.

In Count VII, Plaintiffs seek injunctive relief based on alleged violations described in their other causes of action. But this claim should be dismissed because "injunctive relief is a remedy and not an independent cause of action." *Riley-Jackson v. Ocwen Loan Servicing, LLC*, 2013 WL 5676827, at \*5 (E.D. Mich. Oct.

-20-

18, 2013); *Terlecki v. Stewart*, 278 Mich.App. 644, 663, 754 N.W.2d 899, 912 (2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action."). Rather, "[i]t is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 96-97, 701 N.W.2d 684, 701 (2005). Therefore, a plaintiff cannot advance a request for an injunction without a legally cognizable underlying substantive cause of action. *Terlecki*, 278 Mich.App. at 663, 754 N.W.2d at 912. Plaintiffs' Count VII purports to state a separate request for injunctive relief, and, thus, fails to state a claim.

Moreover, Plaintiffs make no attempt to even identify what "specific type[] of injunctive relief" they seek. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 257 (6th Cir. 2018). They also fail to allege facts showing that they have no adequate remedy at law—a prerequisite for granting a party injunctive relief. *See Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 478 (6th Cir. 2005) (citing *Coffman v. Breeze Corp.*, 323 U.S. 316, 322 (1945)). Therefore, Plaintiffs' conclusory allegations as to injunctive relief "do not satisfy the requirements for Article III" standing, *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016), which must be established "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *see Waskul*, 900 F.3d at

257 (recognizing that requirement extends to each "specific type[] of injunctive relief"). Accordingly, Count VII should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated:  May 7, 2025                    Respectfully submitted,

/s/ Benjamin W. Jeffers
Benjamin W. Jeffers
HICKEY HAUCK BISHOFF JEFFERS &
SEABOLT, PLLC
1 Woodward Ave Suite 2000
Detroit, MI 48226
Telephone: (313) 964-8600
bjeffers@hhbjs.com

Elizabeth B. Herrington
Mohamed Awan
Michael W. Fakhoury
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
beth.herrington@morganlewis.com
mohamed.awan@morganlewis.com
michael.fakhoury@morganlewis.com

Michael J. Ableson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-60000
michael.ableson@morganlewis.com

*Attorneys for Defendant, UBP Bay City, LLC*

-22-

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that I caused a true and correct copy of the

foregoing to be filed and served upon all counsel of record via the U.S. District Court

for the Eastern District of Michigan's CM/ECF system.

Dated: May 7, 2025                  */s/ Benjamin W. Jeffers*
                                    Benjamin W. Jeffers