UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM HOWARD, et al.,

      Plaintiffs,

v.                                                                  Case No. 25-cv-10926
                                                                    HON. MARK A. GOLDSMITH
UBP BAY CITY, LLC, et al.,

      Defendants.

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION (Dkt. 33) AND
MOTION FOR EARLY DISCOVERY (Dkt. 12)**

In this class action, Plaintiffs bring claims related to a bridge restoration agreement between the City of Bay City and UBP Bay City, L.L.C. The principal issues are UBP's charging tolls before the restoration of Independence Bridge was substantially completed—an alleged breach of the agreement—and UBP's allegedly excessive closures of the bridge after re-opening. The full background is set forth in the Court's recent opinion (Dkt. 38) granting the City's motion to dismiss (Dkt. 21) and granting in part UBP's motion to dismiss (Dkt. 20).

Filed initially in state court, this action was removed to this Court by UBP under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA), prompting Plaintiffs to file a motion for early discovery regarding jurisdiction (Dkt. 12). After the motions to dismiss were filed, Plaintiffs filed a motion to hold those motions in abeyance (Dkt. 22). After conducting conferences with counsel, the Court issued an order for Plaintiffs to respond to the motions to dismiss. 11/13/25 Order (Dkt. 32). This triggered Plaintiffs' motion for reconsideration (Dkt. 33).

1

Plaintiffs have not filed a motion for remand—challenging removal on jurisdictional or any other grounds—although they had stated they would file such a motion.  Mot. to hold in abeyance at 6.  Nor have Plaintiffs asserted in any of their filings that the Court lacks jurisdiction. Instead, they have stated, at most, that this Court "likely lacks jurisdiction."  Id. at 5.  They have sought early discovery to confirm that.  Id. at 6; Mot. for early discovery at 9.

"Trial courts have broad discretion in determining the timing of pretrial discovery…" and that includes the question ". . . whether to permit discovery before deciding jurisdictional issues." Dynamic Image Techs., Inc. v. U.S., 221 F.3d 34, 36, 38 (1st Cir. 2000).  Where a party challenges a court's jurisdiction, "the court has broad discretion to defer pretrial discovery if the record indicates that discovery is unnecessary (or, at least, is unlikely to be useful) in regard to establishing the essential jurisdictional facts."  Id. at 38.

Here, Plaintiffs have not expressly challenged jurisdiction but assert that they may develop grounds to do so.  Thus, the Court's discretion must be exercised based on an assessment of what jurisdictional challenges might be mounted and consideration of other appropriate factors.  See Byte Fed., Inc. v. Lux Vending LLC, No. 8:23-cv-102, 2024 WL 1907279, at *2 (M.D. Fla. May 1, 2024) ("A statement that discovery is usually limited until jurisdictional challenges are resolved does not persuade the Court that, as a matter of law, [defendant] need not respond to any merits discovery propounded by Plaintiff. While Courts often stay or limit merits discovery while a jurisdictional" challenge is pending, it does not happen "as a matter of course" and is not "otherwise required by the Federal Rules of Civil Procedure." (punctuation modified)).

CAFA vests district courts with original jurisdiction over class actions in which the citizenship of any member of the plaintiff class is different from the citizenship of any defendant, the aggregate number of proposed plaintiffs is 100 or greater, and the amount in controversy

exceeds $5 million.  See 28 U.S.C. § 1332(d)(2).  The first two requirements are not in dispute. But Plaintiffs argue that the amount in controversy may not be met, so they have sought early discovery "to formally establish whether [UBP] has met the $5 million in controversy requirement."  Mot. for early discovery at 8.

As the party invoking federal jurisdiction, the removing defendant faced with an actual jurisdictional challenge would have a burden to show that the amount-in-controversy requirement can be satisfied.  But this "is a moderate burden that … does not place upon the defendant the daunting burden imposed by the legal certainty test, to research, state, and prove the plaintiff's claim for damages."  Brown v. Paducah & Louisville Ry., Inc., No. 312-cv-00818, 2013 WL 5273773, at *3 (W.D. Ky. Sept. 17, 2013) (punctuation modified).  "Rather, the defense is entitled to rely on a 'fair reading' of the allegations set forth in the complaint, meaning that the amount in controversy may be established by drawing reasonable inferences based on the nature and extent of the damages requested in the complaint."  Id. (citing Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 573 (6th Cir. 2001)) (punctuation modified).

Here, a fair reading of the allegations in the complaint is that the amount in controversy exceeded $5 million at the time of removal.  While it is unclear whether UBP has collected $5 million in tolls, Plaintiffs are seeking wide-ranging relief, including injunctive relief, which must be considered for purposes of determining the amount in controversy.  See Kendrick v. FCA US LLC, No. 21-cv-12995, 2022 WL 2758518, at *6 n.5 (E.D. Mich. July 14, 2022) ("Plaintiffs are also seeking injunctive relief, and it is appropriate to consider the value of injunctive relief when determining the amount in controversy.") (citing Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co., 621 F.3d 554, 560 (6th Cir. 2010)).

The injunctive relief Plaintiffs are seeking would greatly impair UBP's ability to collect tolls for use of the bridge.  To date, UBP has invested approximately $170 million repairing, rehabilitating, and modernizing Independence Bridge and another bridge in Bay City.  Further, it has an ongoing contractual obligation to maintain Independence Bridge for another 75 years.  See Notice of Removal ¶ 33.  UBP asserts that it undertook these costly expenditures and burdensome obligations on the understanding that it would be able to recoup its expenses through the collection of tolls.

Additionally, Plaintiffs are seeking statutory penalties, fines, and treble damages on behalf of thousands of putative class members, all of which must be incorporated into the amount-in-controversy calculation.  See, e.g., Badeen v. PAR, Inc., No. 19-10532, 2020 WL 6135656, at *4 (E.D. Mich. Mar. 31, 2020) ("Considering Plaintiffs' allegation of 1.8 million repossessions together with their request for treble damages under Mich. Comp. Laws § 339.916, it is unambiguously ascertainable that the amount in controversy exceeds $5,000,000."); Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 573–574 (S.D.N.Y. 2021) (holding that, even if alleged actual damages were less than $5 million, the possibility that the class might recover statutory damages of $500 per violation under state consumer protection laws created a "reasonable probability" that the amount in controversy was greater than $5 million for purposes of CAFA). Plaintiffs do not challenge any of the defense assertions on these points.

These allegations strongly suggest that the amount-in-controversy requirement has been met.  Plaintiffs offer no facts to suggest otherwise.  While Plaintiffs' supposition that they may prevail on that issue might ultimately prove correct, there is little reason to believe that is true at this time.

Holding up progress in this case through an initial sequencing of jurisdictional discovery would come at a significant price. The public has an interest in a prompt resolution of the issues Plaintiffs seek to litigate here, as do Plaintiffs themselves. Similarly, Defendants have a significant interest in a prompt resolution of the case. Staying the case for several months while the parties take discovery on a jurisdictional issue that presently holds little promise of success would not be prudent.

Plaintiffs seek discovery for other grounds that it might assert for remand, but these are not jurisdictional grounds. Specifically, Plaintiffs say they need early discovery to test whether the "home state" or "local controversy" exceptions to CAFA apply. See 28 U.S.C. 1332(d)(4)(A), (d)(4)(B); Mot. for early discovery at 8. These challenges are non-jurisdictional. Clark v. Lender Processing Servs., 562 F. App'x 460, 465 (6th Cir. 2014).

The "home state" exception has several requirements, one of which is the "primary defendants" must be citizens of the state where the action was originally filed.[1] See 28 U.S.C. § 1332(d)(4)(B); see also Martin v. Trott L., P.C., 265 F. Supp. 3d 731, 744 (E.D. Mich. 2017). UBP is unquestionably a primary defendant, yet it asserts that it is not a citizen of Michigan. Under CAFA, an unincorporated entity is a citizen of the state under whose laws it is organized and of the state where its principal place of business is located. See 28 U.S.C. § 1332(d)(10). UBP is a limited liability company organized under the laws of Delaware whose "principal place of

---

[1] "[U]nder the 'home state controversy' exception to CAFA jurisdiction, a district court must decline to exercise CAFA jurisdiction if (1) at least two-thirds of the members of all proposed plaintiff classes (in the aggregate) are citizens of the state in which the class action was originally filed, and (2) all of the primary defendants are citizens of the state in which the class action was originally filed." Evans v. AMISUB (SFH), Inc., No. 17-cv-2528, 2017 WL 9807437, at *1 (W.D. Tenn. Dec. 8, 2017) (citing 28 U.S.C. § 1332(d)(4)(B)).

business" is Illinois.[2] Notice of Removal at ¶ 25. UBP says that executive decisions for UBP are primarily made from its operating headquarters in Illinois, see Pl. Resp at 11. Caselaw supports that the location of significant decision-making is the principal place of business. See Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010) ("the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."). Accordingly, UBP does not appear to be a citizen of Michigan for purposes of CAFA, which renders the "home state" exception inapplicable.

For the "local controversy" exception to apply, one of the defendants "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims" must be a citizen of Michigan. See 28 U.S.C. § 1332(d)(4)(A). When making this determination, the court must consider the "core" of the allegations in the complaint and who is the "real target in this action." See Adams v. 3M Co., 65 F.4th 802, 806 (6th Cir. 2023) (punctuation modified).

Here, while Bay City has been named as a nominal co-defendant, the "real target" of Plaintiffs' claims is UBP, which is not a citizen of Michigan. The central allegations in the complaint are focused on UBP's conduct – its charging of tolls and bridge closures. And the principal relief sought in the complaint is sought from UBP. See ¶¶ Compl. 106–165 (Dkt.1-1). Indeed, it appears that the only concrete relief sought from Bay City consists of declaratory or injunctive relief that would compel Bay City to hold UBP in breach of contract and take further action against UBP. See id. ¶¶ 112, 122, 165. That is essentially duplicative of the relief sought directly against UBP. Accordingly, it would appear that there is no "significant relief" being sought from a Michigan defendant, which renders this exception inapplicable. See Adams, 65 F.4th at 806 (holding that the "local controversy" exception did not apply where liability of local

---

[2] Plaintiffs do not seek discovery regarding the citizenship of UBP.

seller of defective respirator masks was "derivative" of the foreign manufacture's liability; "[a] jury, for example would be unlikely to find the merchants liable without also finding [the manufacturer] liable).

Finally, Plaintiffs seek discovery "to establish whether CAFA's discretionary exception to jurisdiction at 28 U.S.C. § 1332(d)(3) is implicated." Mot for early discovery at 8. A court may elect to decline jurisdiction if at least one third of the putative class members are citizens of the state where the action was filed, and the Court determines that the equities of the case favor remand after considering a six-factor inquiry. See 28 U.S.C. § 1332(d)(3). Even if Plaintiffs were to establish that they have met the one third threshold, they have not provided any reason why the equities of the case favor remand.

In sum, there are enough facts in the record to satisfy the Court that it has subject matter jurisdiction, and that none of the CAFA exceptions apply. Discovery will commence shortly. Plaintiffs will be entitled to explore these issues fully along with other discovery. It would not be efficient to hold up progress in this case for several months just to focus exclusively on issues that currently do not hold much promise that a remand would be successful.

The Court denies Plaintiffs' motion for early discovery (Dkt. 12) and motion for reconsideration (Dkt. 33).

**SO ORDERED.**

Dated: March 31, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

7

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager

8