# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM HOWARD; JASON DUEMLER; NICOLE DUEMLER; ANN DUEMLER; MICHAEL LUTZ; SHERRI HOWELL; ROCHELLE JAMMER; and MARK KOHLHORST, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBP BAY CITY, LLC d/b/a BAY CITY BRIDGE PARTNERS and CITY OF BAY CITY, <br><br> Defendants. | Case No. 1:25-cv-10926-MAG-PTM <br><br> Hon. Mark A. Goldsmith <br><br> **DEFENDANT UBP BAY CITY, LLC D/B/A BAY CITY BRIDGE PARTNERS' ANSWER AND AFFIRMATIVE DEFENSES** |

Benjamin W. Jeffers
HICKEY HAUCK BISHOFF
JEFFERS & SEABOLT, PLLC
706 S. Main St.
Plymouth, MI 48170
Telephone: (313) 964-8600
bjeffers@hhbjs.com

Michael J. Ableson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-60000
michael.ableson@morganlewis.com

Elizabeth B. Herrington
Mohamed Awan
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
beth.herrington@morganlewis.com
mohamed.awan@morganlewis.com

*Counsel for Defendant UBP Bay City, LLC*

## <u>DEFENDANT UBP BAY CITY, LLC D/B/A BAY CITY BRIDGE PARTNERS' ANSWER AND AFFIRMATIVE DEFENSES</u>

Defendant UBP Bay City, LLC d/b/a Bay City Bridge Partners ("UBP" or "Defendant"), by and through its undersigned counsel, answers and otherwise responds to the Complaint (the "Complaint") filed by Plaintiffs William Howard, Jason Duemler, Nicole Duemler, Ann Duemler, Michael Lutz, Sherri Howell, Rochelle Jammer, and Mark Kohlhorst (collectively, "Plaintiffs"). All allegations are denied unless expressly admitted, and an admission to a portion of an allegation does not constitute an admission, either express or implied, to the remainder of the allegation.

## INTRODUCTION

1.     **This case began with grand promises of a better future for Bay City and its residents. Defendant UBP BAY CITY, LLC, operating under the moniker of "Bay City Bridge Partners" repeatedly assured the taxpayers of Bay City, Michigan and the traveling public that its involvement would not only preserve essential infrastructure but also enhance the community's economic well-being. The project was marketed as a collaborative effort—one that would maintain affordable access to Independence and Liberty Bridges while ensuring their long-term viability without placing undue financial strain on residents and businesses.**

**ANSWER:** Defendant denies the allegations in Paragraph 1.

2.     **However, what began as a partnership has deteriorated into a relationship defined by broken promises, unjustified financial burdens, and an erosion of public trust so severe that the very foundation of the contractual agreement cannot likely be preserved.**

**ANSWER:** Defendant denies the allegations in Paragraph 2.

-2-

3.      **This action arises from BCBP's premature and improper implementation of tolling on the Independence Bridge in Bay City, Michigan.**

**ANSWER:** The allegations in Paragraph 3 constitute Plaintiffs' characterization of this action. To the extent a response is required, Defendant denies Paragraph 3.

4.      **Despite its prior representations, BCBP began tolling before it was contractually or legally justified, imposing unexpected financial burdens on users while unjustly enriching itself at the expense of Plaintiffs and the Proposed Class.**

**ANSWER:** Defendant denies the allegations in Paragraph 4.

5.      **Plaintiffs and other bridge users relied on BCBP's promises of fair, predictable, and affordable pricing, only to be subjected to improper, excessive, and arbitrary charges.**

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies the same.

6.      **The unlawful actions taken by BCBP not only contradict its prior commitments but also threaten the economic stability of Bay City and the well-being of its residents.**

**ANSWER:** The allegations in Paragraph 6 are vague, conclusory, and argumentative, and do not state facts to which a response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 6.

## PARTIES

7.      **Plaintiff WILLIAM HOWARD is a resident of Bangor Township, Bay County, Michigan. In response to BCBPs advertisements promoting a flat-rate toll, he obtained a transponder and established an account with BCBP. Since the commencement of tolling on January 1, 2025, he has crossed the toll required Independence Bridge.**

**ANSWER:** Defendant admits only that Plaintiff William Howard obtained a transponder, established an account with Defendant, and crossed the Independence Bridge after January 1, 2025. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 7 and therefore denies the same.

8.      **Plaintiffs JASON DUEMLER and NICOLE DUEMLER are residents of Bangor Township, Bay County, Michigan. In response to BCBP's advertisements promoting a flat-rate toll, they obtained a transponder and established an account with BCBP. Since the commencement of tolling on January 1, 2025, the DUEMLERs have crossed the toll required Independence Bridge.**

**ANSWER:** Defendant admits only that Plaintiffs Jason Duemler and Nicole Duemler obtained a transponder, opened an account with Defendant, and crossed the Independence Bridge after January 1, 2025. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8 and therefore denies the same.

9.      **Plaintiff ANN DUEMLER is a resident of Bangor Township, Bay County, Michigan. In response to BCBP's advertisements promoting a flat-rate toll, she obtained a transponder and established an account with BCBP. Since the commencement of tolling on January 1, 2025, she has crossed the toll required Independence Bridge.**

**ANSWER:** Defendant admits only that Plaintiff Ann Duemler obtained a transponder, opened an account with Defendant, and crossed the Independence Bridge after January 1, 2025. Defendant lacks knowledge and information sufficient

-4-

to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore denies the same.

10.     **Plaintiff MICHAEL LUTZ is a resident of the City of Essexville, Bay County, Michigan. In response to BCBP's advertisements promoting a flat-rate toll, he obtained a transponder and established an account with BCBP. Since the commencement of tolling on January 1, 2025, he has crossed the toll required Independence Bridge.**

**ANSWER:** Defendant admits only that Plaintiff Michael Lutz obtained a transponder, opened an account with Defendant, and crossed the Independence Bridge after January 1, 2025.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 and therefore denies the same.

11.     **Plaintiff SHERRI HOWELL is a resident of Bangor Township, Bay County, Michigan. In response to BCBP's advertisements promoting a flat-rate toll, she obtained a transponder and established an account with BCBP. Since the commencement of tolling on January 1, 2025, she has crossed the Independence Bridge.**

**ANSWER:** Defendant admits only that Plaintiff Sherri Howell obtained a transponder, opened an account with Defendant, and crossed the Independence Bridge after January 1, 2025.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11 and therefore denies the same.

12.     **Plaintiff ROCHELLE JAMMER is a resident of Kawkawlin, Bay County, Michigan. In response to BCBP's advertisements promoting a flat-rate toll, she obtained a transponder and established an account with BCBP. Since**

the commencement of tolling on January 1, 2025, she crossed the toll required Independence Bridge.

**ANSWER:** Defendant admits only that Plaintiff Rochelle Jammer crossed the Independence Bridge after January 1, 2025. Defendant denies that Plaintiff Rochelle Jammer opened an account with Defendant. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and therefore denies the same.

13. **Plaintiff MARK D. KOHLHORST is a resident of Auburn, Indiana and has been charged a toll to cross the Independence Bridge on the circumstances as follows—**

   a. **Each year, he travels to Bay County and the Great Lakes Bay Region for a weekend with his son, during which he patronizes local businesses, partakes in the region's tourist offerings, and contributes to the local economy.**

   b. **During his most recent annual trip in late January and early February 2025, he crossed Independence Bridge without any prior knowledge that it was a toll bridge.**

   c. **Upon returning home, he received a demand for payment in the mail, notifying him that he owed a toll for crossing the bridge.**

   d. **In an effort to understand the situation, he contacted the Mayor of Bay City, who informed him that tolls had recently been implemented on certain bridges.**

   e. **Prior to this conversation, he had no knowledge that tolls had been imposed on Independence Bridge and had not been made aware of any tolling system before crossing.**

**ANSWER:** Defendant admits only that Plaintiff Mark D. Kohlhorst crossed the Independence Bridge after January 1, 2025. Defendant lacks knowledge and

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and therefore denies the same.

14. **Defendant UBP BAY CITY, LLC doing business as Bay City Bridge Partners ("BCBP") is a limited liability company organized under the laws of Delaware, with its principal place of business in Bay City, Michigan, wherein it regularly and systematically conducts business.**

**ANSWER:** Defendant admits that it is a limited liability company organized under the laws of Delaware and that it conducts business in Bay City, Michigan. The remaining allegations in Paragraph 14 purport to state legal conclusions. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 14.

15. **Defendant City of Bay City is a Michigan municipality formed under the laws of the State of Michigan existing within the territorial limits of Bay County, Michigan.**

**ANSWER:** Defendant admits the allegations in Paragraph 15.

## JURISDICTION AND VENUE

16. **This Court has subject matter jurisdiction over this action pursuant to MCL 600.605 and *Dix v Am Bankers Life Assur Co*, 429 Mich 410; 415 NW2d 206 (1987).**

**ANSWER:** The allegations in Paragraph 16 purport to state legal conclusions. To the extent a response is required, Defendant admits only that jurisdiction is proper in the Court where this action is currently pending.

17. **Venue is proper in this Court within Bay County.**

**ANSWER:** The allegations in Paragraph 17 purport to state legal conclusions. To the extent a response is required, Defendant admits only that venue is proper in the Court where this action is currently pending.

## FACTUAL BACKGROUND

**18.    Independence Bridge is a bascule bridge located in Bay City, Bay County, Michigan.**

**ANSWER:** Defendant admits the allegations in Paragraph 18.

**19.    The bridge was constructed and officially opened to traffic in 1976 as a critical transportation link over the Saginaw River.**

**ANSWER:** Defendant admits that the budget was constructed and officially opened to traffic in 1976.  Defendant lacks knowledge and information sufficient to form a belief as to the remaining allegations in Paragraph 19 and therefore denies the same.

**20.    Independence Bridge was built to replace the aging Belinda Street Bridge, which had become structurally insufficient for modern transportation needs.**

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 20 and therefore denies the same.

**21.    Liberty Bridge is also a bascule bridge located in Bay City, Bay County, Michigan, and was constructed to replace the Third Street Bridge, which collapsed into the Saginaw River due to severe disrepair. The collapse underscored the necessity for reliable infrastructure, and together with Independence Bridge, the two crossings became essential transportation arteries for the region.**

**ANSWER:** Defendant admits that Liberty Bridge is a bascule bridge located in Bay City that replaced the Third Street Bridge.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 21 and therefore denies the same.

**22.     Both Independence and Liberty Bridges facilitate daily commuter travel, commercial transportation, and economic activity, serving as crucial links across the Saginaw River.**

**ANSWER:** Defendant admits that both Independence and Liberty Bridges facilitate daily commuter travel and commercial transportation.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 22 and therefore denies the same.

**23.     Since their construction, Independence and Liberty Bridges were owned and maintained by the City of Bay City for the benefit of the traveling public.**

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies the same.

**24.     However, due to the costs associated with maintenance and repairs, and the limited tax base of Bay City property owners, the condition of both bridges deteriorated over time.**

**ANSWER:** Defendant admits that the condition of both bridges deteriorated over time. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 24 and therefore denies the same.

25.     The City of Bay City, burdened by increasing financial strain, reached a point where it determined it could no longer sustain the cost of maintaining and operating both bridges while also providing free access to non-residents who used them regularly.

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore denies the same.

26.     Given the essential role these bridges play in facilitating daily commuter travel, commercial transportation, and overall economic activity, it was concluded that the best course of action was to pursue a solution that involved either repairing or replacing the Independence Bridge to ensure continued access and connectivity.

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore denies the same.

27.     In response to these financial constraints, BCBP entered into contractual agreements with the City of Bay City labelled as a "Concession and Lease Agreement-to rehabilitate the respective Independence and Liberty Bridges.

**ANSWER:** Defendant admits it entered into a Concession and Lease Agreement with the City of Bay City.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 27 and therefore denies the same.

28.     A fair and accurate copy of the Concession and Lease Agreement regarding the Independence Bridge is attached as Exhibit 1.

**ANSWER:** Defendant admits the allegations in Paragraph 28.

29.     Under this contractual arrangement, BCBP was granted a 75-year tolling concession by the City of Bay City in exchange for assuming responsibility for rehabilitating and modernizing the Independence Bridge to

**ensure long-term usability by everyone in exchange for certain tolls to be charged.**

**ANSWER:** The allegations in Paragraph 29 purport to state legal conclusions and/or to characterize the contents of written documents. To the extent a response is required, Defendant denies the allegations in Paragraph 29.

30. **Under this contractual arrangement, BCBP was awarded the right and responsibility for charging reasonable tolls at the appropriate time to cover the costs of renovation, future maintenance, and operation.**

**ANSWER:** The allegations in Paragraph 30 purport to state legal conclusions and/or to characterize the contents of written documents. To the extent a response is required, Defendant denies the allegations in Paragraph 30.

31. **The entire premise behind the decision to renovate Independence Bridge (and Liberty Bridge too) was to minimize economic harm to the community by implementing a tolling system that was both economically viable and affordable.**

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and therefore denies the same.

32. **The tolling scheme was presented as a panacea—an ideal solution that would                                                                          of a complete bridge closure while also alleviating the financial strain of ongoing emergency repairs. By promising reasonable and sustainable toll rates, the project was positioned as a way to ensure long-term infrastructure stability without placing undue financial burdens on residents, businesses, and commuters.**

**ANSWER:** The allegations in Paragraph 32 are vague, conclusory, and argumentative. To the extent a response is required, Defendant denies the allegations in Paragraph 32.

**33.    Rather than harming the community, the toll system was marketed as a means to enhance economic activity, maintain essential transportation links, and provide a cost-effective alternative to permanent closures or unsustainable emergency maintenance.**

**ANSWER:** The allegations in Paragraph 33 are vague, conclusory, and argumentative. To the extent a response is required, Defendant denies the allegations in Paragraph 33.

**34.    The purpose of the agreement between the City of Bay City and BCBP was to relieve the tax-fatigued citizens of Bay City from bearing the financial burden of bridge upkeep, while also allowing BCBP to recoup its investment through specifically structured and reasonable toll collection.**

**ANSWER:** Defendant denies the allegations in Paragraph 34.

**35.    BCBP represented that the tolls would be structured in a manner that would not inhibit, damage, obstruct, or prevent the economic development of Bay County as a whole.**

**ANSWER:** Defendant denies the allegations in Paragraph 35.

**36.    BCBP assured the public and city officials that the tolls would serve as beneficial tools to further economic growth in the area by ensuring the long-term sustainability of the bridges while maintaining affordability for residents. businesses, and commuters.**

**ANSWER:** Defendant denies the allegations in Paragraph 36.

**37.    The tolling system was marketed as a balanced solution that would support infrastructure improvements without imposing undue financial hardship, thereby fostering continued economic activity and regional growth.**

**ANSWER:** The allegations in Paragraph 37 are vague, conclusory, and argumentative. To the extent a response is required, Defendant denies the allegations in Paragraph 37.

**38.** During negotiations, BCBP made repeated public representations that toll rates would be reasonable and affordable for Bay City residents and surrounding communities.

**ANSWER:** Defendant denies the allegations in Paragraph 38.

**39.** During negotiations, BCBP made repeated public representations that the transition to a tolled bridge system would benefit the City by ensuring continued access to safe and well-maintained infrastructure.

**ANSWER:** Defendant denies the allegations in Paragraph 39.

**40.** During negotiations, BCBP made repeated public representations that the bridge would be available for use without significant disruptions, ensuring continued economic and social connectivity for the region.

**ANSWER:** Defendant denies the allegations in Paragraph 40.

**41.** Contrary to these representations, BCBP have failed to make Independence Bridge an operational crossing by repeatedly closing it during overnight hours since January 1, 2025.

**ANSWER:** Defendant denies the allegations in Paragraph 41.

**42.** On January 15, 2025, a mere 15 days since tolling began, the Independence Bridge was closed overnight from 7:00 P.M. to 7:00 A.M. denying the Plaintiffs and other similarly situated individuals the use of the bridge during those times.

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on January 15, 2025, but denies the remaining allegations in Paragraph 42.

**43.** BCBP failed to uphold its obligation to provide a consistently safe, operational. and reliable bridge on January 15, 2025, thereby breaching its duty to ensure uninterrupted access in accordance with the contract.

**ANSWER:** Defendant denies the allegations in Paragraph 43.

**44.     On January 16, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on January 16, 2025, but denies the remaining allegations in Paragraph 44.

**45.     Beginning January 27, 2025, at approximately 12:13 P.M., the Independence bridge was once again closed to all traffic. The closure remained in effect until Friday, January 31, 2025, at 5:00 P.M., denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed at certain times between January 27, 2025 and January 31, 2025, but denies the remaining allegations in Paragraph 45.

**46.     On February 3, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 3, 2025, but denies the remaining allegations in Paragraph 46.

**47.     On February 4, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe,**

**operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 4, 2025, but denies the remaining allegations in Paragraph 47.

**48.     On February 5, 2025, the Independence Bridge was closed again beginning at 7:00 P.M., with the Bay County 911 Alerts system informing the public that reopening time was unknown.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain evening hours on February 5, 2025, but lacks knowledge or information sufficient to form a belief as to the specific time alleged and the contents of any Bay County 911 Alerts communication and therefore denies the same. Defendant otherwise denies the allegations in Paragraph 48.

**49.     BCBP failed to uphold its obligation to provide a consistently safe, operational, and reliable bridge on February 5, 2025, thereby breaching its duty to ensure uninterrupted access in accordance with the contract.**

**ANSWER:** Defendant denies the allegations in Paragraph 49.

**50.     On February 6, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe. operational, and reliable bridge. BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 6, 2025, but denies the remaining allegations in Paragraph 50.

-15-

**51.     On February 11, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 11, 2025, but denies the remaining allegations in Paragraph 51.

**52.     On February 12, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge. BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 12, 2025, but denies the remaining allegations in Paragraph 52.

**53.     On February 13, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 13, 2025, but denies the remaining allegations in Paragraph 53.

**54.     On February 14, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 14, 2025, but denies the remaining allegations in Paragraph 54.

**55.    On February 17, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe. operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 17, 2025, but denies the remaining allegations in Paragraph 55.

**56.    On February 18, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 18, 2025, but denies the remaining allegations in Paragraph 56.

**57.    On February 19, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe. operational. and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 19, 2025, but denies the remaining allegations in Paragraph 57.

**58.     On February 20, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe. operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 20, 2025, but denies the remaining allegations in Paragraph 58.

**59.     On February 24, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 24, 2025, but denies the remaining allegations in Paragraph 59.

**60.     On February 25, 2025, from 7:00 PM to 7:00 AM. the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge. BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 25, 2025, but denies the remaining allegations in Paragraph 60.

**61.     On February 26, 2025, from 7:00 PM to 7:00 AM. the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge, BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 26, 2025, but denies the remaining allegations in Paragraph 61.

**62.   On February 27, 2025, from 7:00 PM to 7:00 AM, the Independence Bridge was closed to all traffic, denying Plaintiffs and other similarly situated individuals access to the bridge. By failing to maintain a consistently safe, operational, and reliable bridge. BCBP breached its contractual duty to ensure uninterrupted access.**

**ANSWER:** Defendant admits that Independence Bridge was closed during certain overnight hours on February 27, 2025, but denies the remaining allegations in Paragraph 62.

**63.   BCBP failed to uphold its obligation to provide a consistently safe, operational, and reliable bridge on in a consistent pattern from January 15, 2025 thru February 27, 2025, thereby breaching its duty to ensure uninterrupted access in accordance with the contract.**

**ANSWER:** Defendant denies the allegations in Paragraph 63.

**64.   During the 44-day period between January 15, 2025. and February 28, 2025, the Independence Bridge was closed for a total of 23 days, *rendering it inaccessible for approximately 52% of that time*. This substantial period of closure demonstrates a failure to provide a consistently safe, operational, and reliable bridge. significantly disrupting travel, commerce, and daily commuting for Plaintiffs and similarly situated individuals.**

**ANSWER:** Defendant denies the allegations in Paragraph 64.

**65.   According to the City of Bay City Traffic Alert page, as well as various media outlets, the Independence Bridge is to be closed from 7:00 P.M.**

**to 7:00 A.M. March 3, 2025 through March 7, 2025, further depriving access and use to the bridge that is purportedly "completed."**



**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the contents of the City of Bay City Traffic Alert page or any media reports referenced in this paragraph and therefore denies the same. Defendant denies the remaining allegations in Paragraph 65.

66.    **On information and belief, additional closures are scheduled and expected beyond March 7, 2025.**

**ANSWER:** Defendant denies the allegations in Paragraph 66.

67.    **Prior to January 1, 2025, BCBP extensively advertised the benefits of obtaining a transponder for unlimited use.**

**ANSWER:** Defendant admits that prior to January 1, 2025, it advertised benefits of obtaining a transponder and purchasing a monthly unlimited subscription for users who were subject to tolling and expected to make frequent use of the Independence and/or Liberty bridges but denies the remaining allegations in Paragraph 67.

68.   **These representations were made publicly and also displayed on billboards, online platforms, and printed materials throughout Bay City and surrounding areas.**

**ANSWER:** Defendant admits that it advertised benefits of obtaining a transponder and purchasing a monthly unlimited subscription in Bay City and surrounding areas but denies the remaining allegations in Paragraph 68.

69.   **An example is attached as Exhibit 2: copies of additional materials are within BCBP's business records.**

**ANSWER:** Defendant admits the allegations in Paragraph 69.

70.   **BCBP represented that non-Bay City residents will begin paying tolls _upon construction completion_ at a rate of $15 per month for unlimited crossings for cars, trucks, SUVs. motorcycles with transponders or $2 per crossing with a transponder.**

**ANSWER:** The allegations in Paragraph 70 are vague, conclusory, and purport to characterize unspecified written materials that speak for themselves.  To the extent a response is required, Defendant denies the allegations in Paragraph 70.

71.   **BCBP explained that a similar arrangement would be provided to Bay City residents starting after 5 years after the completion of construction.**

**ANSWER:** The allegations in Paragraph 71 are vague, conclusory, and purport to characterize unspecified written materials that speak for themselves. To the extent a response is required, Defendant denies the allegations in Paragraph 71.

72. **BCBP promoted the availability of unlimited tolling options, leading the public to believe that by obtaining a transponder, they would have unrestricted access to the Independence Bridge.**

**ANSWER:** Defendant admits that it advertised benefits of obtaining a transponder and purchasing a monthly unlimited subscription for users who were subject to tolling and expected to make frequent use of the Independence and/or Liberty bridges but denies the remaining allegations in Paragraph 72.

73. **Pursuant to the Concession and Lease Agreement entered into by the City of Bay City and BCBP, Section 18 provides that "no tolls shall be charged or using or crossing the Independence Bridge until after... the Completion has occurred." (emphasis added).**

**ANSWER:** The allegations contained in Paragraph 73 of the Complaint purport to state legal conclusions or to characterize the contents of written documents that speak for themselves, and no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 73.

74. **Pursuant to the Concession and Lease Agreement entered into by the City of Bay City and BCBP, Section 16 states that "UBP shall substantially complete upgrade, modernization and _all_ rehabilitation work on the Independence Bridge in accordance with this Lease (including but not limited to Section 14 of this Lease) and shall cause the Independence Bridge to be continuously open and operational for use by the public for highway purposes, 24 hours a day, in the ordinary course for thirty consecutive (30) days."**

**ANSWER:** The allegations contained in Paragraph 74 of the Complaint purport to state legal conclusions or to characterize the contents of written documents that speak for themselves, and no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 74.

75. **As evidenced by the repeated closure of the Independence Bridge as outlined above, "the Completion" pursuant to Sections 16 and 18 of the Concession and Lease Agreement has not yet been effectuated.**

**ANSWER:** The allegations contained in Paragraph 75 of the Complaint purport to state legal conclusions or to characterize the contents of written documents that speak for themselves, and no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 75.

76. **Yet, on January 1, 2025, BCBP commenced collecting tolls in contrary to its express prior representations as well as Sections 16 and 18 of the Concession and Lease Agreement entered into by the City of Bay City and BCBP.**

**ANSWER:** Defendant admits only that it began collecting tolls in January 2025; the remaining allegations contained in Paragraph 76 of the Complaint purport to state legal conclusions or to characterize the contents of written documents that speak for themselves, and no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 76.

77. **The initiation of tolling prior to such full and final completion is a breach of the BCBP's obligations under the Concession and Lease Agreement.**

**ANSWER:** The allegations contained in Paragraph 77 of the Complaint purport to state legal conclusions or to characterize the contents of written

documents that speak for themselves, and no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 77.

**78. The initiation of tolling prior to such full and final completion is an act inconsistent with its prior made representations to the public.**

**ANSWER:** Defendant denies the allegations in Paragraph 78.

**79. BCBP's obligation under its Concession and Lease Agreement with the City of Bay City and by the representations publicly made was to *complete* the rehabilitation of Independence Bridge *before* commencing any toll collection.**

**ANSWER:** The allegations contained in Paragraph 79 of the Complaint purport to state legal conclusions or to characterize the contents of written documents that speak for themselves, and no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 79.

**80. Any effort by BCBP to assert expressly or implicitly that Independence Bridge was "completed" when it remained subject to ongoing construction, including nightly closures, is both factually and legally untenable.**

**ANSWER:** Defendant denies the allegations in Paragraph 80.

**81. Despite not being completed and not fulfilling requirements of Sections 16 and 18 of the Concession and Lease Agreement entered into by the City of Bay City and BCBP, BCBP nevertheless began charging tolls on January 1, 2025.**

**ANSWER:** Defendant admits only that it began collecting tolls on or about January 1, 2025, but denies the remaining allegations in Paragraph 81.

**82. BCBP, through its tolling practices, has breached and continues to breach its representations, promises and contractual obligations through both tolling before it should, as well as the imposed excessive fees that create undue hardships for individuals and businesses reliant on this essential infrastructure.**

-24-

**ANSWER:** Defendant denies the allegations in Paragraph 82.

**83.    On February 3, 2025, BCBP announced on its Facebook Page as follows—**



Bay City Bridge Partners
February 3 at 9:24 AM · 🌐

The price of the monthly unlimited subscription is increasing to $30 per month for unlimited crossings on the Liberty and Independence Bridges. If you are currently signed up for unlimited crossings, this change will be effective on your renewal date in March.

The subscription is most applicable to users who make over 15 trips per month and is valid on both the Liberty and Independence Bridges. You may view your monthly usage history by accessing your account online.

Beginning immediately, we will no longer offer the monthly unlimited option to those who have not already signed up. The pricing change only applies to existing subscription customers and the unlimited plan will end for all customers in July.  At that time, BCBP may consider alternative promotions.

Please evaluate your travel usage, and consider the following options:
1. KEEP YOUR SUBSCRIPTION. If you wish to remain on the unlimited subscription option with the increase to $30 per month in March, NO ACTION IS NEEDED.
2. END YOUR SUBSCRIPTION. You can end your monthly subscription by doing one of the following:
• Log into your account and send us a message,
• Send an email to info@baycitybridgepartners.com,
• Call 855.648.4330, or
• Visit our walk-in center.
Please include your account number or license plate number when contacting us.

IMPORTANT – KEEP YOUR EXISTING TRANSPONDER: Once your subscription is removed, you can continue to use your existing transponder and pay per trip.  A new transponder is NOT required.  You will be charged the standard transponder rates based on your vehicle class.

Note: If you currently have multiple vehicles on the monthly plan and would like to cancel your plan on a specific vehicle, not all, please include the associated license plate number for that vehicle when contacting us.

For more information, reach out to us in any of the four ways noted detailed above.

**ANSWER:** Defendant admits the allegations in Paragraph 83.

**84.    On information and belief, BCBP did not undertake this toll increase consistent with Sections 16 and 18 or Exhibit C to the Concession and Lease Agreement entered into by the City of Bay City and BCBP.**

**ANSWER:** Defendant denies the allegations in Paragraph 84.

**85.     The City of Bay City has a duty (and then failed its duty) to ensure that public infrastructure serves the public interest and protect the public's interest it negotiated on its behalf as part of the Concession and Lease Agreement**

**ANSWER:** Defendant lacks knowledge sufficient to form a belief as to the allegations in Paragraph 85 and therefore denies the same.

**86.     BCBP's tolling practices (as tolerated by the City of Bay City) have created conditions similar to the bypassing of towns by major highways, leading to economic decline and unnecessary hardship on local businesses.**

**ANSWER:** Defendant denies the allegations in Paragraph 86.

## CLASS ALLEGATIONS

**87.     Plaintiffs request this Court to certify this class action on behalf of themselves and the following class defined as: all non-Bay City residents and drivers who have crossed the Independence Bridge and paid any toll or purchased an unlimited pass from BCBP but excluding counsel (and their immediate family or businesses), the assigned Judge (and his/her immediate family) and the Judge's staff (and their immediate family).**

**ANSWER:** Defendant denies that this action is properly maintainable as a class action, denies that the proposed class is ascertainable or otherwise satisfies the requirements of Rule 23, and denies that Plaintiffs are entitled to certification of any class as requested in Paragraph 87.

**88.     This action satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of MCR 3.501(A)(1), and the superiority requirements of MCR 3.501(A)(2) support class certification in this case.**

**ANSWER:** Defendant denies the allegations in Paragraph 88.

**89.    Records held by BCBP will confirm that the proposed Class satisfies the numerosity requirement by easily numbering into thousands with joinder of all putative class members into a single action being impracticable.**

**ANSWER:** Defendant admits only that numerosity could be be satisfied, but denies the remaining allegations in Paragraph 89.

**90.    Further, as pre-renovation traffic counts have showed, the Independence Bridge had an historical daily county of approximately 20,000 crossings per day.**

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and therefore denies the same.

**91.    There are questions of fact and law common to the Class that predominate over any questions affecting only individual members.**

**ANSWER:** Defendant denies the allegations in Paragraph 91.

**92.    The common legal and factual issues predominate over any questions affecting only individual persons.**

**ANSWER:** Defendant denies the allegations in Paragraph 92.

**93.    A class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity, compared to other available methods for the fair and efficient adjudication of this controversy.**

**ANSWER:** Defendant denies the allegations in Paragraph 93.

**94.    A class action is the appropriate method for the fair and efficient adjudication of this controversy.**

**ANSWER:** Defendant denies the allegations in Paragraph 94.

**95.    BCBP has acted or refused to act on grounds generally applicable to the class.**

**ANSWER:** Defendant denies the allegations in Paragraph 95.

96. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for BCBP, and/or substantially impair or impede the ability of Class Members to protect their interests.

**ANSWER:** Defendant denies the allegations in Paragraph 96.

97. Plaintiffs are adequate class representatives because they are members of the proposed class and their interests do not conflict with the interests of the members of the class they seek to represent.

**ANSWER:** Defendant denies the allegations in Paragraph 97.

98. The interests of the members of the class will be fairly and adequately protected by the Plaintiffs and their undersigned counsel, who have extensive experience prosecuting complex consumer protection and class action litigation.

**ANSWER:** Defendant denies the allegations in Paragraph 98.

99. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy.

**ANSWER:** Defendant denies the allegations in Paragraph 99.

100. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**ANSWER:** Defendant denies the allegations in Paragraph 100.

101. The claims presented by Plaintiffs are typical of the claims of the class members, as each class member has suffered illegal tolls and ongoing bridge remediation closures as implemented by BCBP.

**ANSWER:** Defendant denies the allegations in Paragraph 101.

102. A determination by this Court that BCBP's tolling and ongoing bridge closures are unlawful will effectively resolve the claims of all Class members in a uniform manner.

**ANSWER:** Defendant denies the allegations in Paragraph 102.

103. **The damages suffered by individual Class members are relatively small in comparison to the costs of litigation, making class treatment the most practical method of addressing the harm.**

**ANSWER:** Defendant denies the allegations in Paragraph 103.

104. **A class action will promote justice and judicial economy by consolidating claims into a single proceeding rather than burdening the court with multiple individual lawsuits.**

**ANSWER:** Defendant denies the allegations in Paragraph 104.

105. **The court is requested to provide notice be sent to the class and require BCBP to bear the cost of such notice.**

**ANSWER:** This paragraph contains a request for relief from the Court. To the extent a response required, Defendant denies the allegations in Paragraph 105.

<div align="center">

**COUNT I**
**VIOLATION OF PUBLIC TRUST PRINCIPLES**
**(AGAINST BOTH BCBP & BAY CITY)**

</div>

106. **Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

107. **The public trust doctrine is based on the fundamental principle that certain essential public resources must remain accessible and beneficial to the public.**

**ANSWER:** The Court dismissed Count I on March 31, 2026. *See* Order, ECF No. 38 at 5. To the extent a response is required, Defendant denies the allegations in Paragraph 107.

**108. Public infrastructure, including roads and bridges crossing large bodies of water like the Saginaw River, serves a similar critical function in ensuring public access and economic stability.**

**ANSWER:** The Court dismissed Count I on March 31, 2026. *See* Order, ECF No. 38 at 5. To the extent a response is required, Defendant denies the allegations in Paragraph 108.

**109. The unreasonable tolling and its disproportionate impact violate the principles of public trust and fair access to essential infrastructure.**

**ANSWER:** The Court dismissed Count I on March 31, 2026. *See* Order, ECF No. 38 at 5. To the extent a response is required, Defendant denies the allegations in Paragraph 109.

**110. The burden of maintaining public infrastructure should be fairly distributed and not placed disproportionately on a select group of individuals and businesses.**

**ANSWER:** The Court dismissed Count I on March 31, 2026. *See* Order, ECF No. 38 at 5. To the extent a response is required, Defendant denies the allegations in Paragraph 110.

**111. The actions of BCBP undermine the public interest by restricting access, increasing costs, and creating hardships that conflict with the principles of public infrastructure management.**

**ANSWER:** The Court dismissed Count I on March 31, 2026. *See* Order, ECF No. 38 at 5. To the extent a response is required, Defendant denies the allegations in Paragraph 111.

**112. WHEREFORE, Plaintiffs respectfully request that this Court:**

a.     **Declare that the premature tolling and tolling practices renders BCBP and the City of Bay City in violation of the public trust principles applicable to public infrastructure;**

b.     **Issue an injunction preventing the continued imposition of excessive and improperly assessed tolls and requiring adjustments to ensure fair and reasonable access;**

c.     **Require City of Bay City and BCBP to conduct a comprehensive review of tolling policies and implement corrective measures to mitigate disproportionate harm to residents, businesses, and daily commuters from the breaches of the public trust and the violations of the Concession and Lease Agreement;**

d.     **Order BCBP to forfeit and refund all tolls collected improperly during the period when Independence Bridge was not fully completed, as a damages remedy for its wrongful conduct;**

e.     **Award attorney fees and court costs; and**

f.     **Award any other relief that the Court deems just and appropriate.**

**ANSWER:** The Court dismissed Count I on March 31, 2026.  *See* Order, ECF No. 38 at 5.  To the extent a response is required, Defendant denies the allegations in Paragraph 112.

## COUNT II
## THIRD-PARTY BENEFICIARY CLAIM - BREACH OF CONTRACT
## (AGAINST BOTH BCBP & BAY CITY)

113.  **Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein.**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

114. **Plaintiffs, including the Proposed Class, are third-party beneficiaries of the contractual agreement between the City of Bay City and BCBP pursuant to MCL 600.1405 and legal precedents based upon the same.**

-31-

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 114.

**115. The agreement between the City of Bay City and BCBP was expressly entered into for the benefit of the public, including residents, commuters, and visitors who rely on the Independence Bridge for travel, commerce, commuting, and other activities.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 115.

**116. The contract required BCBP to rehabilitate and maintain the bridges while ensuring fair, reasonable, and non-punitive tolling practices that would not harm the community or the region's economy.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 116.

**117. BCBP, in assuming the contractual obligations for bridge maintenance and tolling, publicly represented that it would implement reasonable and predictable toll structures that would not negatively impact local businesses, travelers, or economic development.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 117.

**118. The City of Bay City has agreed to only provide BCBP that ability to raise or assess tolls by "waiv[ing]" the required "Public Comment Period in its sole discretion," which it has not done.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 118.

**119. Instead, BCBP has engaged in (and the City of Bay City has improperly acquiesced to the BCBP's engagement in) practices that are contrary to the stated objectives of the contract, including:**

a. **Prematurely implementing tolls before completion of the bridge renovations;**

b. **Misrepresenting the nature and cost of tolling to the public;**

c. **Failing to provide adequate notice to travelers about tolling costs and policies;**

d. **Imposing new toll structures that are excessive, burdensome, and damaging to Bay County's economy; and**

e. **Engaging in conduct that demonstrates complete disregard for the interests of the public, who were the intended beneficiaries of the agreement.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 119.

**120. BCBP's failure to adhere to the contract's purpose and obligations constitutes a material breach that directly harms Plaintiffs and the traveling public, who were intended to benefit from the agreement.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 120.

**121.    The City of Bay City's failure to require BCBP to adhere to the terms and conditions of the purpose and obligations of the Concession and Lease Agreement constitutes a material breach that directly harms Plaintiffs and the traveling public, who were intended to benefit from the agreement.**

**ANSWER:** The Court dismissed Count II on March 31, 2026.  *See* Order, ECF No. 38 at 10.  To the extent a response is required, Defendant denies the allegations in Paragraph 121.

**122.    WHEREFORE, with respect to Plaintiffs' third-party beneficiary claims, Plaintiffs respectfully request that this Court:**

   a.    **Declare that Plaintiffs and the Proposed Class are third-party beneficiaries of the Concession and Lease Agreement between the City of Bay City and BCBP;**

   b.    **Find that BCBP has materially breached its obligations under the Concession and Lease Agreement by engaging in deceptive, excessive, and premature tolling practices that harm the public;**

   c.    **Find that the City of Bay City has materially breached its obligations under the Concession and Lease Agreement by allowing BCBP to engage in deceptive, excessive, and premature tolling practices that harm the public;**

   d.    **Issue an injunction preventing BCBP from continuing to impose tolls in violation of its contractual obligations and requiring it to implement a fair, transparent, and contractually-compliant tolling system;**

   e.    **Issue an order commanding the City of Bay City find BCBP is in violation of its contractual obligations under the Concession and Lease Agreement and require the City of Bay City to, in turn, require BCBP to implement a contractually-proper, fair, and transparent tolling system;**

   f.    **Award all contractual damages resulting from the breaches of the contract and otherwise or further order BCBP to forfeit and refund all tolls collected in violation of its obligations under the contract;**

g. **Award attorney fees and court costs;**

h. **Impose any additional penalties, fines, or costs permitted under applicable law to remedy BCBP's breach of contract and failure to honor its commitments to the public; and**

i. **Grant any other relief that the Court deems just and appropriate.**

**ANSWER:** The Court dismissed Count II on March 31, 2026. *See* Order, ECF No. 38 at 10. To the extent a response is required, Defendant denies the allegations in Paragraph 122.

<div align="center">

**COUNT III**
**BREACH OF CONTRACT**
**(AGAINST BCBP ONLY)**

</div>

123. **Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein.**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

124. **BCBP extensively advertised the slogan "Save Time, Save Money" to promote its monthly unlimited toll pass, inducing Plaintiffs and similarly situated individuals to purchase the pass under the reasonable expectation that they would receive unlimited crossings at a fixed cost.**

**ANSWER:** Defendant denies the allegations in Paragraph 124.

125. **By virtue of this offer and Plaintiffs' acceptance, an express contract was formed between BCBP and its customers**

**ANSWER:** Defendant denies the allegations in Paragraph 125.

126. **Additionally, Sections 16 and 18 of the Concession and Lease Agreement explicitly states that no tolls shall be collected until after the completion of the bridge as therein defined.**

**ANSWER:** The allegations contained in Paragraph 126 of the Complaint purport to state legal conclusions or to characterize the contents of written documents that speak for themselves, and no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 126.

127.   **Contrary to the obligation and requirements of the Concession and Lease Agreement, BCBP has begun charging tolls despite the fact that the Independence Bridge is not completed, thereby breaching the obligations with the travelling public.**

**ANSWER:** Defendant denies the allegations in Paragraph 127.

128.   **BCBP's conduct constitutes a material breach of the express contract, as it failed to deliver the promised benefits of the unlimited pass as well as improperly imposing tolls in direct violation of the Concession and Lease Agreement prior to completion of the Independence Bridge.**

**ANSWER:** Defendant denies the allegations in Paragraph 128.

129.   **As a direct and proximate result of BCBP's breach, Plaintiffs and class members have suffered unknown damages, including improperly assessed tolls, loss of expected savings, and additional financial burdens.**

**ANSWER:** Defendant denies the allegations in Paragraph 129.

130. **Plaintiffs seek all available remedies, including restitution, injunctive relief, and damages arising from BCBP's failure to honor the express contract.**

**ANSWER:** Defendant denies the allegations in Paragraph 130.

131.   **BCBP's actions constitute breach of express contract, resulting in financial and logistical harm to Plaintiffs and similarly situated individuals.**

**ANSWER:** Defendant denies the allegations in Paragraph 131.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
## (AGAINST BCBP ONLY)

**132.   Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein.**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

**133.   Count IV is pled in the alternative to Count III**

**ANSWER:** This paragraph contains a statement regarding Plaintiffs' pleading. To the extent a response is required, Defendant denies the allegations in Paragraph 133.

**134.   An implied contract existed between BCBP and its customers, including Plaintiffs and Class Members, based on the reasonable expectation that, in exchange for paying tolls and/or purchasing an unlimited crossing pass(es), BCBP would provide continuous, reliable access to the bridge 24 hours per day, 7 days per week.**

**ANSWER:** Defendant denies the allegations in Paragraph 134.

**135.   BCBP's actions have failed to uphold this implied contract in multiple ways.**

**ANSWER:** Defendant denies the allegations in Paragraph 135.

**136.   Despite accepting payments for unlimited crossings. BCBP has routinely closed the Independence Bridge for large numbers of hours, making it unavailable to Plaintiffs and Class Members.**

**ANSWER:** Defendant denies the allegations in Paragraph 136.

**137.   These closures have materially deprived Plaintiffs of the full benefit of their bargain.**

**ANSWER:** Defendant denies the allegations in Paragraph 137.

-37-

**138.   Additionally, Plaintiffs and Class members have been forced to pay tolls before the completion of the Independence Bridge, in direct contradiction to the expectation established by BCBP's representations.**

**ANSWER:** Defendant denies the allegations in Paragraph 138.

**139.   Plaintiffs have detrimentally relied upon what have become BCBP's material misrepresentations.**

**ANSWER:**  Defendant denies the allegations in Paragraph 139.

**140.   This further constitutes a failure to perform under the implied contractual obligations.**

**ANSWER:** Defendant denies the allegations in Paragraph 140.

**141.   BCBP's breach of the implied contract has resulted in direct and proximate harm to Plaintiffs and Class members, including increased travel costs, lost time, inconvenience, and financial burdens associated with the inability to access the Independence Bridge as promised.**

**ANSWER:** Defendant denies the allegations in Paragraph 141.

**142.   Plaintiffs seek all available remedies, including restitution, injunctive relief, and damages arising from BCBP's failure to honor the implied contract.**

**ANSWER:** The allegations contained in Paragraph 142 of the Complaint do not contain allegations of fact. To the extent a response is required, Defendant denies the allegations in Paragraph 142.

**143.   WHEREFORE, with respect to Plaintiffs' implied contract claims, Plaintiffs respectfully request that this Court:**

**a.    Declare that an implied contract existed between BCBP and the public, based on BCBP's representations, advertisements, and public assurances;**

**b.    Find that BCBP breached this implied contract by regularly closing and continuing to close the Independence Bridge despite**

      **initiating toll collection before the completion of bridge renovations;**

c.      **Issue an injunction preventing BCBP from continuing to enforce tolling policies regularly closing and continuing to close the Independence Bridge inconsistent with its prior representations and requiring BCBP to restore fair and reasonable tolling terms in line with the implied agreement;**

d.      **Order BCBP to forfeit and refund all tolls collected in violation of the implied contract, as well as any other ill-gotten gains resulting from its deceptive and misleading practices;**

e.      **Award attorney fees and court costs;**

f.      **Impose any additional penalties, fines, or costs permitted under applicable law to remedy BCBP's breach of the implied contract and unjust enrichment at the expense of the public; and**

g.      **Award any other relief that the Court deems just and appropriate.**

**ANSWER:** The allegations contained in Paragraph 143 of the Complaint do not contain allegations of fact. To the extent a response is required, Defendant denies the allegations in Paragraph 143.

## COUNT V
## UNJUST ENRICHMENT
## (AGAINST BCBP ONLY)

144. **Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein.**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

145. **BCBP has been unjustly enriched by improperly charging tolls and collecting fees for unlimited passes before they were contractually entitled to do so.**

**ANSWER:** Defendant denies the allegations in Paragraph 145.

146. **Plaintiffs and Class Members made these payments under the reasonable expectation that they would receive full, uninterrupted access to the Independence Bridge as a "completed". bridge.**

**ANSWER:** Defendant denies the allegations in Paragraph 146.

147. **However, the Independence Bridge remains incomplete as evidenced by its closure from 7:00 P.M. to 7:00 A.M. nightly. depriving Plaintiffs and Class members of the full benefit of the bargain.**

**ANSWER:** Defendant denies the allegations in Paragraph 147.

148. **Despite this, BCBP has demanded tolls and fees and wrongfully profiting from services it has failed to fully provide.**

**ANSWER:** Defendant denies the allegations in Paragraph 148.

149. **BCBP's actions have resulted in the improper retention of funds to which it was not entitled, causing financial harm to Plaintiffs and Class members.**

**ANSWER:** Defendant denies the allegations in Paragraph 149.

150. **Retention of these payments under these circumstances would be inequitable and contrary to principles of fairness and justice.**

**ANSWER:** Defendant denies the allegations in Paragraph 150.

151. **As a direct and proximate result of BCBP's unjust enrichment. Plaintiffs and Class Members have suffered monetary losses.**

**ANSWER:** Defendant denies the allegations in Paragraph 151.

152. **Plaintiffs seek restitution and all appropriate equitable relief to prevent BCBP from continuing to profit unfairly at the expense of its customers.**

**ANSWER:** The allegations contained in Paragraph 152 of the Complaint do not contain allegations of fact. To the extent a response is required, Defendant denies the allegations in Paragraph 152.

153. **WHEREFORE, with respect to Plaintiffs' unjust enrichment claims, Plaintiffs respectfully request that this Court:**

a. **Declare that BCBP has been unjustly enriched by improperly collecting tolls before the completion of the bridges, imposing excessive and unauthorized charges, and failing to honor its public commitments regarding affordable tolling;**

b. **Find that BCBP's collection of these tolls constitutes wrongful conduct, as the revenue generated was the direct result of misleading representations, premature tolling, and bad faith practices;**

c. **Order BCBP to disgorge all ill-gotten gains obtained through its illegal and improper conduct, including but not limited to all improperly collected tolls and related fees charged to the public in violation of fair tolling expectations;**

d. **Impose any additional penalties, fines, or costs permitted under applicable law to fully remedy BCBP's unjust enrichment and ensure that no party profits from deceptive or unlawful business practices;**

e. **Award attorney fees and court costs;**

f. **Award any other relief that the Court deems just and appropriate to prevent BCBP from retaining any benefits wrongfully obtained at the expense of the public.**

**ANSWER:** The allegations contained in Paragraph 153 of the Complaint do not contain allegations of fact. To the extent a response is required, Defendant denies the allegations in Paragraph 153.

## COUNT VI
## VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT
## (AGAINST BCBP)

154.   **Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein.**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

155.   **BCBP has engaged in unfair, deceptive, and unlawful business practices in violation of the Michigan Consumer Protection Act (MCPA). MCL 445.901 et seq., by improperly charging tolls and collecting fees for unlimited passes before they were contractually entitled to do so and did so contrary to the representations it has long made.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 14, 15. To the extent a response is required, Defendant denies the allegations in Paragraph 155.

156.   **BCBP extensively advertised its toll pass with the promise of saving time and money, inducing Plaintiffs and Class members to purchase unlimited passes under the reasonable expectation that they would receive full, uninterrupted access to the Independence Bridge while the bridge remains incomplete, as evidenced by its closure from 7:00 P.M. to 7:00 A.M. nightly. depriving Plaintiffs of the benefit of the bargain.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 14, 15. To the extent a response is required, Defendant denies the allegations in Paragraph 156.

157.   **By charging tolls and collecting fees before providing the promised and advertised service, BCBP has engaged in deceptive trade practices. including but not limited to:**

   a.   **Misrepresenting the benefits of the unlimited toll pass by failing to disclose material restrictions on access after January 1, 2025.**

   b.   **Failing to deliver the promised service, despite accepting payment from consumers.**

   c.   **Charging consumers for tolls before the completion of the Independence Bridge, contrary to contractual obligations.**

   d.   **Engaging in acts that caused confusion and misunderstanding regarding the availability of access to the Independence Bridge.**

   **ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 14, 15. To the extent a response is required, Defendant denies the allegations in Paragraph 157.

   158.   **As a direct and proximate result of BCBP s deceptive and unfair practices, Plaintiffs and Class Members have suffered harm.**

   **ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 14, 15. To the extent a response is required, Defendant denies the allegations in Paragraph 158.

   159.   **Plaintiffs seek all available remedies under the MCPA, including statutory damages, restitution, injunctive relief, and any other appropriate relief to prevent BCBP from continuing its unlawful and deceptive conduct.**

   **ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 14, 15. To the extent a response is required, Defendant denies the allegations in Paragraph 159.

   160.   **WHEREFORE, with respect to Plaintiffs' Michigan Consumer Protection Act (MCPA) claims. Plaintiffs respectfully request that this Court:**

   a.   **Declare that BCBP's actions, including but not limited to its deceptive advertising, premature tolling, failure to honor promised**

   flat-rate tolling options, and imposition of excessive fees, constitute unfair, unconscionable, and deceptive business practices in violation of the Michigan Consumer Protection Act, MCL 445.901, et seq.;

b.  **Find that BCBP knowingly misled the public regarding the nature and cost of its tolling system, causing financial harm to Plaintiffs and similarly situated individuals;**

c.  **Issue an injunction prohibiting BCBP from continuing its deceptive and unfair tolling practices and requiring compliance with the representations it made to the public regarding fair and affordable tolls;**

d.  **Order BCBP to forfeit and refund all tolls and fees collected as a result of its deceptive practices and provide restitution to all affected consumers;**

e.  **Impose statutory penalties, fines, or any other remedies available under the Michigan Consumer Protection Act to deter future violations and compensate affected parties;**

f.  **Award Plaintiffs treble damages as permitted under MCL 445.911(2) for willful violations of the Act;**

g.  **Award Plaintiffs their actual attorney fees incurred to date, as well as all future attorney fees and litigation costs necessary to prosecute this action, as authorized under the Michigan Consumer Protection Act; and**

h.  **Grant any other relief that the Court deems just and appropriate to ensure that BCBP is held accountable for its deceptive and unlawful conduct.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026. *See* Order, ECF No. 38 at 14, 15. To the extent a response is required, Defendant denies the allegations in Paragraph 160.

## COUNT VII
## INJUNCTIVE RELIEF BASED UPON VIOLATIONS OF COUNTS I THROUGH VI

**161.   Plaintiffs reassert and incorporate all preceding paragraphs as if fully set forth herein.**

**ANSWER:** Defendant incorporates the foregoing answers to all preceding paragraphs as if fully set forth herein.

**162.   Plaintiffs seek injunctive relief to prevent further harm caused by the unlawful, deceptive, and unfair practices of BCBP.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 15.  To the extent a response is required, Defendant denies the allegations in Paragraph 162.

**163.   BCBP has improperly charged tolls and collected fees for unlimited passes before the contractual conditions were met, while also failing to provide continuous access to the Independence Bridge, depriving Plaintiffs and Class Members of the benefit of their bargain.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026.  *See* Order, ECF No. 38 at 15. To the extent a response is required, Defendant denies the allegations in Paragraph 163.

**164.   Unless enjoined by this Court, BCBP will continue to engage in these unlawful and deceptive practices, causing ongoing harm to Plaintiffs and Class Members. Monetary damages alone are insufficient to remedy the harm, as Plaintiffs require the ability to access the bridge as promised and to prevent continued wrongful collection of tolls and fees.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026. *See* Order, ECF No. 38 at 15. To the extent a response is required, Defendant denies the allegations in Paragraph 164.

**165. WHEREFORE. Plaintiffs seek a preliminary and permanent injunction against BCBP. ordering the following relief:**

**a. Prohibiting BCBP from charging tolls or collecting fees for unlimited passes until the Independence Bridge is fully operational 24 hours per day, 7 days per week.**

**b. Requiring BCBP to refund all improperly collected tolls and fees to Plaintiffs and Class Members.**

**c. Mandating that BCBP disclose accurate and complete information regarding the availability of the bridge and any future closures.**

**d. Enjoining BCBP from engaging in further deceptive trade practices in violation of the Michigan Consumer Protection Act.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026. *See* Order, ECF No. 38 at 15. To the extent a response is required, Defendant denies the allegations in Paragraph 165.

**166. FURTHERMORE, Plaintiffs further request any other equitable relief this Court deems just and appropriate to prevent further consumer harm and ensure compliance with contractual and statutory obligations.**

**ANSWER:** The Court dismissed Count VI on March 31, 2026. *See* Order, ECF No. 38 at 15. To the extent a response is required, Defendant denies the allegations in Paragraph 166.

## RESPONSE TO REQUEST FOR RELIEF

UBP denies the allegations in the Request for Relief, including that Plaintiffs are entitled to any form of relief against UBP.

## AFFIRMATIVE DEFENSES

Without assuming any burden not otherwise imposed by law, and reserving the right to amend these defenses as discovery proceeds, UBP states the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (CONTRACT TERMS CONTROL)

Plaintiffs' claims are barred or limited because the governing agreement(s), which speak for themselves, permit the conduct alleged or otherwise do not support Plaintiffs' interpretation.

### SECOND AFFIRMATIVE DEFENSE
### (LACK OF CONTRACT / DEFINITENESS / CONSIDERATION)

To the extent Plaintiffs allege the existence of a contract, their claims are barred by lack of mutual assent, indefiniteness of terms, and/or lack of consideration.

### THIRD AFFIRMATIVE DEFENSE
### (STATUTE OF FRAUDS)

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of frauds, including but not limited to MCL 566.132.

### FOURTH AFFIRMATIVE DEFENSE
### (STATUTE OF LIMITATIONS)

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations, including but not limited to MCL 600.5807.

## FIFTH AFFIRMATIVE DEFENSE
## (WAIVER, ESTOPPEL, AND LACHES)

Plaintiffs' claims are barred by the doctrines of waiver, estoppel, and/or laches.

## SIXTH AFFIRMATIVE DEFENSE
## (UNJUST ENRICHMENT BARRED BY EXPRESS CONTRACT)

Plaintiffs' unjust enrichment claim is barred because an express contract governs the same subject matter.

## SEVENTH AFFIRMATIVE DEFENSE
## (NO UNJUST ENRICHMENT)

Plaintiffs cannot establish the elements of unjust enrichment, including that Defendant received and unjustly retained a benefit at Plaintiffs' expense and that no adequate remedy at law exists.

## EIGHTH AFFIRMATIVE DEFENSE
## (VOLUNTARY PAYMENT DOCTRINE)

Plaintiffs' claims are barred, in whole or in part, by the voluntary payment doctrine.

## NINTH AFFIRMATIVE DEFENSE
## (UNCLEAN HANDS)

Plaintiffs' equitable claims are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE
## (LACK OF CAUSATION)

Any alleged damage was not proximately caused by Defendant's conduct but by independent or superseding causes.

## ELEVENTH AFFIRMATIVE DEFENSE
## (LIMITATION OF LIABILITY)

Plaintiffs' claims are barred or limited by applicable contractual limitations of liability, disclaimers, or other limiting provisions.

## TWELFTH AFFIRMATIVE DEFENSE
## (STANDING)

Plaintiffs lack standing to assert one or more of the claims alleged.

## THIRTEENTH AFFIRMATIVE DEFENSE
## (FAILURE TO JOIN NECESSARY PARTIES)

Plaintiffs' claims are barred, in whole or in part, for failure to join necessary and indispensable parties.

***

Defendant reserves the right to assert additional defenses as they become known through discovery.

# REQUEST FOR JUDGMENT

UBP respectfully requests that the Court enter judgment in UBP's favor and against Plaintiffs on all of their claims; dismiss the Complaint with prejudice; deny class certification; award UBP its costs, expenses and attorneys' fees; and award such other relief as the Court deems just and proper.

Dated: April 28, 2026

Respectfully submitted

<div style="margin-left:auto">

*/s/ Benjamin W. Jeffers*

Benjamin W. Jeffers
HICKEY HAUCK BISHOFF JEFFERS
& SEABOLT, PLLC
706 S. Main St.
Plymouth, MI 48170
Telephone: (313) 964-8600
bjeffers@hhbjs.com

Elizabeth B. Herrington
Mohamed Awan
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
beth.herrington@morganlewis.com
mohamed.awan@morganlewis.com

Michael J. Ableson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-60000
michael.ableson@morganlewis.com

*Attorneys for Defendant, UBP Bay City,
LLC*

</div>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that I caused a true and correct copy of the

foregoing to be filed and served upon all counsel of record via the U.S. District Court

for the Eastern District of Michigan's CM/ECF system.

Dated: April 28, 2026                    */s/ Benjamin W. Jeffers*
                                                  Benjamin W. Jeffers (P57161)